

**SIGNED this 02 day of June, 2008.**

_____
**R. Thomas Stinnett**
**UNITED STATES BANKRUPTCY JUDGE**
_____


# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re

Marilyn Russell,                                              No. 07-11374
                                                             Chapter 7
     Debtor


Richard F. Clippard, United States Trustee

     Plaintiff

v.                                                           Adversary Proceeding
                                                             No.  07–1098
Marilyn Russell

     Defendant


Appearances:  Richard F. Clippard, U. S. Trustee, William R. Sonnenburg, Assistant U. S. Trustee

       Marilyn Russell, *Pro Se*


R. Thomas Stinnett, United States Bankruptcy Judge


### **MEMORANDUM**

In this adversary proceeding the United States Trustee contends that the debtor should not receive a discharge of her debts. The U. S. Trustee's objection to discharge relies on several of the grounds set out in § 727 of the bankruptcy code. 11 U.S.C. § 727(a). The complaint is based primarily on the debtor's failure to provide information that the bankruptcy code and rules require her to provide so that the bankruptcy case can be administered. On January 16, 2008, the court held a pre-trial conference in this adversary proceeding. The debtor has now filed a motion for recusal based primarily on events during the pre-trial conference. The motion has not been referred to a different bankruptcy judge because the law does not require it. 28 U.S.C. § 455; *United States v. Hatchett*, 978 F.2d 1259, 1992 WL 296865 (6th Cir. 1992) (Table).

The debtor's arguments can be understood only in light of events before the pre-trial conference. The court will also recount some pleadings from after the pre-trial conference because they reflect on the debtor's previous arguments and attitude. The court can take judicial notice of pleadings and events in the bankruptcy case and adversary proceeding. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201; *see, e.g.*, *Rickel & Assoc., Inc. v. Smith (In re Rickel & Assoc., Inc.)*, 272 B.R. 74 (Bankr. S. D. N. Y. 2002); *Northwestern Institute of Psychiatry, Inc. v. Travelers Indemn. Co. (In re Northwestern Institute of Psychiatry, Inc.)*, 268 B.R. 79 (Bankr. E. D. Pa. 2001); *In re Blum*, 255 B.R. 9 (Bankr. S. D. Ohio 2000); *Smith v. Weissfisch (In re Muzquiz)*, 122 B.R. 56 (Bankr. S. D. Tex. 1990).

## The Bankruptcy Case

<u>April 11, 2007</u>

The debtor began her pending bankruptcy case in this court by filing a chapter 13 petition. She filed the petition *pro se* – not represented by an attorney. The petition asked for the debtor's street address, but she listed a post office box in Rossville, Georgia. The  debtor's petition revealed the filing of two prior bankruptcy cases, one in Tennessee in 2007 and the other in Maryland in 2000.

Along with the petition, the debtor filed a verification of creditor matrix with 16 addresses. Those included two addresses for the Georgia Department of Revenue and two addresses for the United States Department of Education.

The debtor did not file a number of documents required by the bankruptcy code and rules: (1) a proposed chapter 13 plan, (2) the statement of compliance with the credit counseling requirement, (3) the statement of payment advices, (4) schedules A through J, (5) the summary of the schedules, (6) the statement of financial affairs, (7) the statistical summary of certain liabilities and related data, and (8) the statement of current monthly income and disposable income calculation. 11 U.S.C. § 521(a), (b); Fed. R. Bankr. P. 1007 [Interim] & 3015. The court entered an order requiring the debtor to file these documents by April 26, 2007.

April 12, 2007

The meeting of creditors was set for May 9, 2007. The order and notice also set July 9, 2007 as the last date for filing a complaint to determine the dischargeability of certain debts. 11 U.S.C. § 523(c) & § 1328(a); Fed. R. Bankr. P. 4007(c) [Interim].  As usual in a chapter 13 case, no deadline was set for filing a complaint to deny the debtor's discharge. 11 U.S.C. 1328; Fed. R. Bankr. P. 4004 [Interim]. The certificate of service indicates that notice of the meeting of creditors and the complaint deadline was sent to the 16 creditors listed in the creditor matrix and to the U. S. Trustee.

April 23, 2007

The debtor filed a motion to convert the case from chapter 13 to chapter 7. The motion was not accompanied by a certificate of service but did include a list of creditors. This list included two local attorneys who were not included in the original creditor matrix: Jay Ku and B. Stewart Jenkins, c/o Daniel Habenicht.

April 26, 2007

The deadline for the debtor to file the required schedules and other documents passed without the debtor having filed them.

April 27, 2007

The court entered an order converting the case to chapter 7. The certificate of service for the conversion order does not include the two local attorneys.

April 30, 2007

When the case was converted to chapter 7, Douglas R. Johnson became the chapter 7 trustee. A new order and notice set the meeting of creditors in the chapter 7 case on May 25, 2007. It also set July 24, 2007 as the last date for filing complaints to deny discharge or to determine the dischargeability of a particular debt. 11 U.S.C. § 523(c) & 727; Fed. R. Bankr. P. 4004 [Interim] & 4007 [Interim]. This notice was sent to the two local attorneys who were listed with the debtor's motion to convert. In particular, the notice was sent to Daniel Habenicht in the office of attorney B. Stewart Jenkins.

May 9, 2007

The court entered an order directing the debtor to file the documents required in a chapter 7 case: Schedules A through J, the summary of schedules, the statement of financial affairs, the statistical summary of certain liabilities and related data, the statement of compliance with the credit counseling requirement, and the statement of current monthly income and means test calculation. The debtor was required to file the documents by May 23, 2007, two days before the meeting of creditors.

May 17, 2007

The court entered an order for the debtor to show cause why her bankruptcy case should not be dismissed for failure to pay the fee for converting to chapter 7. The order set the hearing on June 14, 2007.

May 23, 2007

The deadline for the debtor to file the required documents passed without filing by the debtor.

May 25, 2007

The chapter 7 trustee continued the meeting of creditors to July 6, 2007.

June 4, 2007

The U. S. Trustee filed a motion for a Rule 2004 examination and to prevent dismissal of the debtor's bankruptcy case. The motion alleged that the debtor had filed three *pro se* bankruptcy cases in the preceding six years, that each case involved a skeleton petition, and the debtor had received a discharge in the first case. A skeleton petition means a petition with the creditor matrix but without the schedules and other documents that a debtor is required to file. The U. S. Trustee's motion also asserted

that he needed to examine the debtor to determine her identity and her financial condition, including the existence of assets that might be available to pay creditors. Finally, the motion alleged that creditors, the trustee, and other interested parties were prejudiced by being unable to examine the debtor. The motion asked that the Rule 2004 examination be set for the same time as the continued meeting of creditors on July 6, 2007.

The motion was accompanied by a certificate of service stating that an exact copy of the motion, the proposed order, and the certificate of service were sent by mail properly addressed and with correct postage to the debtor at the address given by the debtor in her bankruptcy petition, a post office box in Rossville, Georgia. The U. S. Trustee also filed a notice of hearing; it certified mailing to the debtor at the same address of notice that a hearing would be held on the motion on June 28, 2007.

June 7, 2007

The Assistant U. S. Trustee filed a subpoena *duces tecum* commanding the debtor to produce her social security card, her driver's license, her most recent pay stubs, her bank statements, and the bankruptcy schedules for examination at the meeting of creditors or the Rule 2004 examination both scheduled for the same time on July 6, 2007. The subpoena also commanded the debtor to appear and "testify at the taking of a deposition." The subpoena was sent by certified mail to the post office box that the debtor listed as her address in the bankruptcy petition.

The Assistant U. S. Trustee signed the subpoena on June 5, 2007. The subpoena includes a certificate of service stating that it was mailed to the debtor at the post office box in Rossville, Georgia on June 5, 2007. The certificate of service is signed by a paralegal specialist in the office of the Assistant U. S. Trustee.

June 14, 2007

A hearing was scheduled for this date on the order for the debtor to show cause why her bankruptcy case should not be dismissed for failure to pay the fee for conversion to chapter 7. The debtor filed a motion to dismiss her bankruptcy case. The court continued the show cause hearing to June 28, 2007 at the same time as the hearing on the U. S. Trustee's motion to prevent dismissal of the case and for a Rule 2004 examination.

June 19, 2007

The Assistant U. S. Trustee filed another subpoena *duces tecum* that was issued on June 18, 2007. The subpoena is the same as the earlier subpoena except that it includes a certificate of service by hand delivery to the debtor at the Hamilton County Courthouse. The certificate is signed by the paralegal specialist who mailed the first subpoena.

June 22, 2007

The court entered an order setting the debtor's motion to dismiss on June 28, 2007, at the same time as the show cause hearing and the hearing on the U. S. Trustee's motion to prevent dismissal of the case and for a 2004 examination.

June 28--29, 2007

On June 28, 2007, the court held the scheduled hearing on the debtor's motion to dismiss her case, the U. S. Trustee's motion to prevent dismissal and for a Rule 2004 examination, and the order to show cause why the debtor's case should not be dismissed for failure to pay the fee for conversion of the case to chapter 7. All the motions were set for hearing at the same time. On June 29, 2007, the court entered three orders. One order denied the debtor's motion to dismiss. Another order granted the U. S. Trustee's motion to deny dismissal of the case and for a Rule 2004 examination at the same time as the meeting of creditors, July 6, 2007 at 9:30 a.m. The third order cancelled the hearing on the order to show cause. This order recites that the debtor failed to appear at the hearing on June 28, 2007.

July 5, 2007

On the day before the scheduled meeting of creditors and Rule 2004 examination, the debtor filed five motions. The motions are referred to below according to the order in which they were docketed.

The first motion asked the court to appoint an attorney to represent her. The motion contained the following statements.

> Debtor simply cannot afford an attorney, and therefore move this Court to have Counsel appointed to represent Debtor. A deposition, has been scheduled for the Debtor, and the likelihood of the deposition to be a legitimate civil purpose is highly unlikely.

> Debtor contends her due process and civil rights was injured and also violated on June 14, 2007 . . . when the Court refused the Debtor when she moved the Court for discovery. Debtor, contends how can she build a foundation for her defense when she's denied discovery; and to have the same evidence used against her is unjust.

The hearing mentioned in the motion concerned the order to show cause why the case should not be dismissed for failure to pay the conversion fee.

The second motion asked for a protective order under Rule 26. The motion refers at times to a deposition instead of the meeting of creditors or the proposed Rule 2004 examination. In this regard, the subpoena form used by the Assistant U. S. Trustee commanded the debtor to appear for a deposition. The subpoena is obviously a generic form not tailored to use for a meeting of creditors or Rule 2004 examination. Under the bankruptcy statutes and procedural rules, neither the meeting of creditors nor a Rule 2004 examination is part of a contested matter or an adversary proceeding. As a result, neither is a deposition governed by Rule 26 of the civil procedure rules. 11 U.S.C. §§ 341 & 343; Fed. R. Bankr. P. 2004, 7001, 7026 & 9014. The debtor may have used "deposition" to mean only the Rule 2004 examination, or she may have used it to mean the meeting of creditors, or she may have used it to mean both. The motion for a protective order is quoted below:

> Debtor, contend this deposition is to simply annoy, harass, embarrass or oppress the debtor, which is prohibited by Federal Civil Procedure Rule 30(d)(3). Debtor, believe the deposition will also violate Federal Civil Procedure Rule 45(c)(3)(B)(ii); and present danger of unfair prejudice that substantially outweigh any probative value according to Federal Civil Procedure Rules of Evidence 403.

> Debtor, request to be prescribed and provide the discovery method other than one selected by the party seeking discovery;

> Debtor, request forbidding inquiry into certain matters, or limiting scope of disclosure or discovery to certain matters;

> Debtor, request that the deposition after being sealed be opened only on court order; and if deposition is unsealed later be revealed only in a specified way; and that the Debtor will be alloted an opportunity to be notified and heard;

> Debtor, request that all parties simultaneously file specified documents or information in sealed envelopes, to be opened as the Court directs;

> Debtor, request that discovery be conducted with _no one_ present except persons designated by the court; (Emphasis added)

> Debtor, request that discovery must be "_relevant to claim_; and that misconduct should not be tolerated;

Debtor, request all documents submitted via the subpoena Duces Tecum be placed under seal and open only by Court Order; and that the Debtor will be notified and alloted an opportunity to be heard

Debtor, request that it be required the deposition be postpone for later date; and until Debtor is able to obtain counsel. (Emphasis added)

Debtor contends the deposition is being taken in *bad faith*; and *do not* serve a legitimate civil purpose which is required under the *United States Justice Trustee's Manual* § 5.2.1.5 ***Investigations Must Have Legitimate Civil Purpose***; and therefore with reasonable certainty the deposition is *not* for a legitimate civil purpose and should be dismissed with prejudice. ***U. S. v. Unruh*, 855 F.2d 1363, 1374 (9th Cir. 1987); and 488 U.S. 474 (1987)** In addition, the U. S. Trustee, did in fact a <u>Motion for 2004 Examination</u>, which also raises lots of questions surrounding the deposition; (Emphasis added)

Debtor, contends she has been unable to obtain Counsel due to reasonable certainty of acts of Concert and Participation by Daniel Habenincht, Esquire of **B. Stewart Jenkins &**, located 408 Forest Avenue, Chattanooga Tennessee. (Emphasis added) Debtor, have not been informed of the complete nature of the deposition or type of deposition. Debtor, ***hereby request that she be appointed a Court Appointed Attorney***, simply because she can not afford one, believed inference by Attorney Daniel Habenicht; and in a effort to help protect her rights under the First and Fourteenth Amendment of the United States Constitution.

Debtor, contends she was not afforded an opportunity to be heard or provided a copy of the Motion for 2004 Examination, filed on June 6, 2007, on behalf of the U. S. Trustee William R. Sonnenburg, in which the Court later granted the motion on June 29, 2007. Debtor, contends that her due process and civil rights have been once again violated and injured. Debtor, also contends there was no copy of that order attached to the subpoena that Amy Culton, paralegal specialist served the Debtor on June 18, 2007 warrants a dismissal of the deposition with prejudice.

Debtor contends she moved the court on <u>*June 14, 2007*</u> for discovery and was denied; and therefore the Debtor's due process and civil rights have been injured and also violated under the <u>*First*</u> and <u>*Fourteenth*</u> Amendment of the United States Constitution as well as under the Tennessee Equal Protection Clause. Debtor, also contends she was not advised of her *Appeal Rights*. Debtor, is at a mere disadvantage without counsel and being taken advantage of by the Court, and therefore seeks for a court appointed counsel (Emphasis added)

That Debtor, contends she believes in fair justice; and the integrity of this Court which is paramount. Deposition is being conducted in bad faith to simply <u>*harass*</u> and <u>*intimidate*</u> the debtor, as well as to <u>*entrap*</u> her and an effort of Attorney Daniel Habenicht to obtain Custody of the debtor's four (4) minor children whom he is representing their father in both Hamilton County Juvenile Court and Hamilton County Circuit Court. Debtor believes that Attorney Habenicht, has submitted the same documents to this Court that a Fulton County Superior Court, Judge Jenny Kutner, Atlanta told his client Theron L. Johnson on December 21, 2005, any documents he obtained under the false subpoena's Fulton County Superior Court were <u>*inadmissible*</u>; and that the debtor needed to obtain a protective order against his client to protect both the debtor and the children. Attorney Habenicht client has a very, very long history of domestic abuse with threats of harm; and he's trying what every avenue he can to win custody for Mr. Johnson that he can convince this Court; and they put the debtor in jail then he can win both of his cases. Attorney

Habenicht have also presented these same documents to Hamilton County Circuit Court before Judge Marie Williams, during a trial in April 2007, in which that trial is still on going. On October 11, 2006 he referenced the same allegations in Hamilton County Juvenile Court before Judge Bailey. Attorney Habenicht is simply losing both cases; and he feels compelled to submit dishonest and untruthful documents to this Court. Attorney Habenicht also has ill feelings because the debtor filed a complaint against him with the *Board of Professional Responsibility, Nashville*; and he's simply out to intimidate the debtor because of his ill feelings. Attorney failed to put the U. S. Trustee on notice about his own client, Theron L. Johnson who has a very long history of domestic abuse with threats of harm against the debtor, he's filed false Federal Income Tax Returns and claimed the debtor's four (4) minor children in which his client is not entitled to do; and received *huge* tax refunds beginning tax period Dec 2003, 2004, 2005 and possible 2006, which Attorney Habenicht is also believed and with reasonable certainty received his attorney retainer from (those) fraudulent tax returns. Attorney Habenicht, is certainly aware of the filing of those tax returns because during direct examination in Hamilton County Circuit Court in April 2007, his own client told him while on the witness stand he had filed head of household on those tax years. How if the children are not in the same house? Attorney Habenicht failed also to tell the U. S. Trustee that his client has committed bigamy not once but *twice* in which he presently has two wives. Attorney Habenicht failed also tell the U. S. Trustee the wife/paramour, M. Johnson who he's presently living with is apart of the tax fraud scheme, they filed federal tax returns together (Vanessa Daniel or Johnson). In addition , they may also fraudulently claimed his paramour son Jean Madere; and received a refund in which Mr. Madere told Hamilton County Juvenile Court on January 17, 2007, on the witness stand that he has never lived with Mr. Johnson. (Emphasis added), warrants Motion 2004 Examination and deposition to be dismissed with prejudice. (This is strictly political, and to help boost Attorney Habenicht Political Career) (Emphasis added)

That Debtor, not be allowed to disclose any of her or her children's whereabouts or places of employment, schools simply because of the long history of domestic violence with threats of harm that will also violate the debtor's rights under the equal protection clause. Debtor, presently has a Motion for Protective Order presently pending before Hamilton County Circuit Court with Judge Marie Williams; and there is a Restraining Order presently in place that was issued against Attorney Habenicht client Theron L. Johnson in Hamilton County Juvenile Court be granted and approved.

Debtor, that certain matters not be inquired into or that the scope of disclosure or discovery be very limited to pending case other certain disclosure or discovery could bring harm to both the debtor and minor children. (Emphasis added) Mr. Johnson has told the debtor that he's going to make her family wear *black* and *shoot* her in the *head*. Debtor, needs protection from this Court. (Emphasis added) be granted and approved.

The debtor's third motion asked the court to disqualify attorney Jay Ku, attorney Daniel Habenicht, and any other staff from the office of attorney B. Stewart Jenkins. The motion cites Rule 28(c). Fed. R. Civ. Proc. 28(c). The motion asked that they be disqualified from taking part in the deposition. The motion alleged that they had a financial interest as the result of their involvement as attorneys representing a relative in pending litigation in the Hamilton County Circuit Court and the Hamilton County

Juvenile Court. The motion also stated that the debtor had filed a complaint against one of the attorneys with the Board of Professional Responsibility for conduct unbecoming an officer of the court.

The fourth motion was a motion to compel discovery under Rule 45(c)(2)(B). Fed. R. Civ. P. 45(c)(2)(B).  The motion states:

> Debtor, contends that both her Civil Rights and Due Process is been injured and also violated under the First and Fourteenth Amendment of the U. S. Constitution and Tennessee Equal Protection Clause.
>
> Debtor contends there is a substantial need of the materials in preparation in building a foundation for the debtor's defense. The party is unable without undue hardship to obtain the substantial equivalent of the material by other means, concerning the action of the Court of it's subject matter.
>
> Debtor, contends the purpose of discovery is to provide a mechanism for making relevant information available to the litigant and being able to have mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation. Herman v. Taylor, 329 U.S. 495, 507 (1947).
>
> Debtor contends the spirit of the rules is violated when advocates attempt to use discovery as a tactical weapons; and the Debtor haven't been allotted equal review. Therefore, being denied on June 14, 2007 violated my rights and no where in the Federal Civil Procedures that the Debtor found where she should be denied discovery because a conversion fee have not been paid in a bankruptcy case.  (Emphasis added)
>
> Debtor, hereby compel for discovery immediately otherwise her civil right and due process will be injured and violated under the First and Fourteenth Amendment of the United States Constitution.

The debtor's fifth motion asked the court to extend the time to submit the documents requested in the U. S. Trustee's subpoena *duces tecum*.

All the motions gave the debtor's address as the post office box in Rossville, Georgia that she gave as her address in the bankruptcy petition.

July 6, 2007

The meeting of creditors had been continued to this day. The chapter 7 trustee subsequently reported that: (1) the debtor failed to appear for the meeting of creditors at the scheduled time, 9:30 a.m. on July 6, 2007; (2) he continued with other meetings until past noon; (3) he called the meeting several times in the hope that the debtor would appear late; (4) the debtor never appeared; and (5) the debtor had not contacted him to request a continuance of the meeting. Docket No. 46, July 11, 2007.

July 10, 2007

   The U. S. Trustee filed a motion to hold the debtor in contempt of court for failure to appear

at the meeting of creditors and Rule 2004 examination. The motion begins by recounting basic facts of

the case, including the debtor's failure to appear at the meeting of creditors on July 6, 2007. The motion

went on to state:

> After running the debtor's name and social security number through the national PACER
> website, the U. S. Trustee found 8 prior filings believed to be those of the debtor.
> *Spreadsheet detailing prior filings filed under Seal as Exhibit A.*
>
> The U. S. Trustee, planning to investigate the matter further, filed a motion for a 2004
> examination and opposing dismissal of the debtor's case in order to inquire about abusive
> filings.
>
> The U. S. Trustee subpoenaed the debtor for the 2004 examination in order to determine
> whether the debtor had filed all the cases disclosed in the national PACER search and to
> find out whether she had received prior discharges and is continuing to abuse the
> bankruptcy system.
>
> The U. S. Trustee personnel served a subpoena duces tecum for the debtor to appear at
> the 2004 examination and produce identifying documents including her social security
> card, driver's license, most recent pay stubs, bank statements and remaining bankruptcy
> schedules.
>
> U. S. Trustee personnel personally served the debtor with the subpoena to appear and
> produce the requested documents.
>
> The debtor did not appear at the §341 meeting of creditors or at the 2004 examination,
> both scheduled for July 6, 2007.
>
> At 4:06 and 4:07 P.M. on July 5, 2007, the debtor filed five (5) pleadings referencing her
> current Post Office Box and the U. S. Trustee subpoena.
>
> The Debtor was aware of her duty to appear.
>
> The U. S. Trustee has requested the Court files of the pre-ECF cases believed to have
> been filed by the debtor in Atlanta and Maryland in order to examine the debtor concerning
> previous filings.

   The U. S. Trustee also filed a motion to file certain documents under seal. The motion

stated that the U. S. Trustee's PACER search had revealed eight bankruptcy cases possibly filed by the

debtor using three different social security numbers. The motion then asked that the exhibit summarizing

the search result be sealed because the exhibit contained the full social security numbers from the prior

bankruptcy cases and disclosure to the public should be prohibited to protect the privacy of the debtor and the true owners of the social security numbers.

July 13, 2007

        The court entered an order denying the debtor's request for appointment of an attorney on the ground that the debtor did not have the constitutional right to representation by an attorney in the bankruptcy case.

        The court also entered a scheduling order.  It reset the U. S. Trustee's motion for contempt from August 9, 2007 to August 2, 2007, because the U. S. Trustee's motion to file the exhibit under seal was already set for August 2, 2007. The order also set for the same date and time the debtor's motion to compel discovery, the debtor's motion for additional time to respond to the subpoena *duces tecum*, and the debtor's motion to disqualify the attorneys involved in the state court proceedings,

        The orders were served by being mailed to the debtor at the post office box address that she gave in the bankruptcy petition and used in the five motions she filed on July 5, 2007.

August 2, 3 & 4, 2007

        The court granted the U. S. Trustee's motion to seal documents and continued to September 20, 2007 the other matters that were set for August 2, 2007 – the debtor's motion for a protective order, motion to disqualify attorneys, motion to compel discovery, and motion to extend time to respond to the subpoena *duces tecum*. The clerk's office certified that on August 5, 2007 it served the debtor with the order allowing the trustee to file documents under seal by mailing the order to the debtor's post office box in Rossville, Georgia.

        The docket includes an entry by the bankruptcy trustee on August 4, 2007 noting that the meeting of creditors was not held on August 2, 2007.

August 9, 2007

        The debtor filed a response to the U. S. Trustee's motion to hold her in contempt for failure to appear at the meeting of creditors or the Rule 2004 examination set for July 6, 2007. The response states:

Debtor, is in agreement the Chapter 13 case was commenced as a Chapter 13 case on April 11, 2007. Debtor denies the case was converted to a Chapter 7. Debtor contends she made a request for conversion to a Chapter 7; but the conversion fee was never paid; therefore the Debtor is presently in a Chapter 13 and not a Chapter 7 as the U. S. Trustee has stated. Debtor, also contends on June 14, 2007 she moved this Court for discovery; but was denied because the conversion fee was not paid. Therefore with reasonable certainty there is no Chapter 7 Bankruptcy. (Emphasis added)

Debtor, denies the U. S. Trustee just *routinely* decided to attend the meeting of creditors on May 25, 2007 at 10:00 A.M. Debtor, believes with reasonable certainty Attorney Daniel Habenicht of B. Stewart Jenkins & Associates Law Firm approached the U. S. Trustee through acts of *Ex Parte Communication* as the real reason the U. S. Trustee was present at the 341 Meeting of Creditors. Under *Bankruptcy Rule 9003(a) (b) Prohibition of Ex Parte Contacts* or Communication is a violation of the Board of Professional Responsibility that warrants sanctions and possible disbarment. (Emphasis added) Debtor, contends she will not have any fair hearings; and that her due process and civil rights have been injured under the United States Constitution under the *Fourth* and *Fourteenth* Amendment. (Emphasis added).

Debtor, contends she has asked the same Attorney, Daniel Habenicht for ***strict*** proof of how he obtained such information on April 3, 2007; that he believes relates to the Debtor. Debtor contends with reasonable certainty the information didn't just magically appear before Attorney Daniel Habenicht or his client Theron L. Johnson. Debtor, contends on December 21, 2005 in Fulton County Superior Court, Atlanta Georgia, Judge Jenny Kutner told Mr. Habenicht client, Theron L. Johnson any and all documents he obtained by establishing a case under false pretense in her Court; and to also use bad faith and invalid subpoena to obtain certain documents were inadmissible. (Emphasis added) Debtor, contends Judge Kutner instructed the Debtor to obtain a protective order upon her return to the State of Tennessee against Attorney Habenicht's client Theron L. Johnson for fear he would bring harm to both the Debtor and her children. (Emphasis added). Debtor, contends with reasonable certainty Attorney Habenicht has ran to the Court house steps to provide the U. S. Trustee with information his own client obtained by a bad faith and invalid subpoena which he believes; but certainly *not* related to the Debtor. (Emphasis added) Debtor, contends there is a *Petition for Custody* that was filed by Attorney Habenicht's client Theron Johnson, and he is simply trying means to help his client win custody of the Debtor's children by assisting the U. S. Trustee in building a case against the Debtor and in hopes that she would be arrested; and then he could file for emergency custody for his client and be awarded custody of the children. Debtor, contends it's Attorney Habenicht client Theron L. Johnson social security number [omitted] and his paramour Vanessa Daniel or Johnson who the U. S. Trustee should be investigating for possible Federal Tax Fraud for tax periods 2003, 2004, 2005 and possible 2006. Debtor, contends with reasonable certainty Mr. Johnson and his paramour may have claimed Debtor's four (4) children as dependents on their Federal Tax Returns; and was not authorized to do so; and possible received tax refunds over $4000.00 for those tax years. Debtor contends perhaps the U. S. Trustee should be investigating Attorney Habenicht's clients; and not the false allegation Attorney Habenicht and his Client Theron L. Johnson has presented to the Bankruptcy Court. (Emphasis added)

[Paragraphs 4 and 5 are omitted because they state that no response is needed, and paragraph 6 is omitted because it is a simple denial.]

Debtor, contends the U. S. Trustee never provided Debtor a copy of the Motion for 2004 Examination or notice of hearing; therefore never giving the Debtor an opportunity to be

heard in this Court, to file an answer or objection to the motion. Debtor, denies the U. S. Trustee findings of such prior filings in part; and that they are unrelated to the Debtor. (Emphasis added)

Debtor, contends the U.S. Trustee should have _never_ Motioned the Court to subpoena Debtor for a 2004 Examination; and for such examination to be by Deposition. (Emphasis added) Debtor, contends the U.S. Trustee was aware of his procedures under the _U.S. Trustee Manual §5.2.1.5 Investigations Must Be of Civil Purpose_ that the U.S. Trustee is violating the Debtor's due process and civil rights under the United States Constitution. Debtor, contends because she is at a disadvantage her rights are being violated; and therefore move this Court to appoint a Counsel who can practice in both Federal and Bankruptcy Court. (Emphasis added)

Debtor, contends the U. S. Trustee's Personnel did serve a subpoena duces tecum for the debtor to appear for a 341 Meeting of Creditors. Debtor contends the U. S. Trustee Personnel _did not_ provide the Debtor a copy of the order for a 2004 Examination when the subpoena was served upon the Debtor on June 14, 2007 and June 18, 2007, which never should have been filed in the first place. (Emphasis added) Debtor, contends and with reasonable certainty her rights have been violated and that both the U. S. Trustee and Attorney Habenicht engaged in Ex Parte Communication of the whereabouts of the Debtor ast a certain time and place in which Attorney Habenicht new the Debtor would be to be served.

Debtor, contends with reasonable certainty the subpoena duces tecum was in bad faith, as well as the 2004 Examination and Deposition. (Emphasis added) Debtor, contends the U. S. Trustee knows first hand his Motion was invalid from the very beginning; and to subpoena the Debtor for a deposition and 2004 Examination is simply harassment, intimidation and entrapment. Debtor, contends both the U. S. Trustee and with reasonable certainty Attorney Daniel Habenicht have both brought judicial bias and prejudice to this case; and the Debtor simply can not have any fair hearings; and therefore should be dismissed with prejudice. (Emphasis added)

Debtor, contends she has done nothing inappropriate by not appearing at the §341 Meeting of Creditors, 2004 Examination or Deposition scheduled for July 6, 2007. Debtor, contends with reasonable certainty the 2004 Examination and Deposition was in bad faith. Debtor, contends she filed a Motion for a Protective Order regarding the matter; and no ruling has been made.

Debtor, contends she did file appropriate pleadings to address her concerns before this Court of the U. S. Trustee and its Personnel bad faith subpoena, 2004 Examination and Deposition. Debtor, contends by her filing such pleading were in fact just and proper for the Debtor to do. Debtor, contends she is in compliance according to the Federal Civil Procedure Rules and the U.S. Trustee Manual. Debtor has rights and those right should never be violated. (Emphasis added)

[Paragraph 13 is omitted as a repeat of the preceding paragraph.]

Debtor, contends Court files requested from Pre-ECF cases filed in Atlanta has nothing to do with the Debtor. Debtor, contends both the U.S. Trustee and possibly Attorney Daniel Habenicht are wrongly accusing the Debtor. Debtor, ask both the U.S. Trustee and Attorney Daniel Habenicht for strict proof of how these names and social security numbers were obtained. (Emphasis added)

Debtor, contends she is being harassed by both the U.S. Trustee and Attorney Daniel
Habenicht. Debtor, contends there is no contempt. (Emphasis added) Debtor, contends
the U.S. Trustee is simply unhappy that the Debtor is doing her best to protect herself as
best she can from allowing the U.S. Trustee to continue to violate her due process and
civil rights.

The debtor also filed an objection to the U. S. Trustee's motion to file documents under
seal even though the court had already granted the motion. Much of the objection repeats the debtor's
response to the motion for contempt. Paragraph 5 states:

Debtor, contends she has a right to equal review under the United States Constitution and
Tennessee Constitution. Debtor, contends how can she build a foundation for her defense
if she hasn't had the opportunity to review discovery that the U.S. Trustee and possible
Attorney Daniel Habenicht has had a chance to review to aide in building a case against
the Debtor. Debtor contends that is certainly not fair justice; and therefore warrants bias
and prejudice.

The court entered an order for the debtor to appear and show cause why she should not
be held in contempt of court for failure to appear at the hearing scheduled for August 2, 2007. The order
set the show cause hearing for September 20, 2007 at 10:30 a.m. The docket reflects that on September
4, 2007, a Deputy U. S. Marshal personally served the debtor with a copy of the order.

August 13, 2007

The docket reflects that mail to the debtor was returned as undeliverable. The returned
items were copies of orders entered on July 13, 2007. One was the scheduling order that set several of
the debtor's motions for hearing on August 2, 2007. The court continued the hearing on those motions
to September 20, 2007.

The clerk's office had certified that the orders were mailed on July 15, 2007 to the same
post office box in Rossville, Georgia that the debtor used as her address in the bankruptcy petition. The
debtor used the same address when she filed five motions on July 5, 2007.  In other words, orders mailed
by the clerk's office on July 15, 2007 to the address that the debtor used on July 5, 2007 were returned
to the clerk as undelivered.

August 23, 2007

The bankruptcy trustee filed a report that the meeting of creditors scheduled for August 2, 2007 was not held because the debtor did not appear, and the meeting was continued to September 4, 2007.

<u>August 29, 2007</u>

The chapter 7 trustee sent notice that the meeting of creditors was continued from September 4, 2007 at 11:30 a.m. to September 20, 2007 at 11:00 a.m.

<u>September 17, 2007</u>

On August 9, 2007, the debtor had filed a response to the U. S. Trustee's motion to hold her in contempt of court for failure to appear on July 6, 2007. Though it was not necessary to set the response for hearing, the court set it for hearing on September 20, 2007 at the same time as the hearing on the motion.

<u>September 20, 2007</u>

Several motions were set for hearing on this day along with the court's order to the debtor to show cause why she should not be held in contempt for failure to appear at the hearings scheduled on August 2, 2007. The debtor filed a motion to continue the show cause hearing. None of the other matters set for hearing was heard. The hearings were continued to October 18, 2007.

The meeting of creditors was also set for September 20, 2007. The bankruptcy trustee entered on the docket a note that the meeting of creditors was continued October 18, 2007 at 10:30 a.m.

<u>October 2, 2007</u>

The court granted the debtor's motion to continue the hearing on the court's show cause order. The court continued the hearing to October 18, 2007 along with all the other matters that had been set for hearing on September 20, 2007 but were continued to October 18, 2007.

The order further directed the clerk's office to give notice that the meeting of creditors was also rescheduled to October 18, 2007. This order extended the deadline for filing a complaint objecting to discharge or to determine the dischargeability of a debt until thirty days after the meeting of creditors scheduled for October 18, 2007.

<u>October 18, 2007</u>

The various motions passed to this date were set for 11:00 a.m., and the meeting of creditors was set for 10:30 a.m. The debtor filed a motion to quash (1) the U. S. Trustee's motion to hold her in contempt, (2) the subpoena duces tecum, and (3) the Rule 2004 examination. The motion is stamped filed at 11:01 a.m.

The motion to quash the U. S. Trustee's motion for contempt asserted that the debtor did not fail to appear for the meeting of creditors on July 6, 2007 but filed a motion for a protective order that still had not been ruled upon by the court.

As to the subpoena and the Rule 2004 examination, the debtor's motion to quash repeated her continuing allegations: (1) the Rule 2004 examination was requested in bad faith; (2) the court violated her constitutional rights by denying her request for discovery and thereby preventing her from building a defense; (3) any communications between the U. S. Trustee and attorney Daniel Habenicht concerning the debtor's bankruptcy case were prohibited *ex parte* communications warranting a complaint to the Board of Professional Responsibility; (4) the U. S. Trustee's attempted investigation violates her due process and civil rights because it is aimed at developing evidence for a criminal referral instead of serving a legitimate civil purpose.

The debtor also filed another motion to dismiss her bankruptcy case. The motion to quash and the motion to dismiss are the first pleadings filed by the debtor with an address different from the Rossville, Georgia post office box. The debtor has never filed notice of a change of address even though it is required by the rules. Fed. R. Bankr. P. 4002(a)(3) [Interim].

The court held the hearings set for this date on various motions filed by the parties. The court denied the debtor's motion for a protective order.

The debtor appeared at the meeting of creditors and claimed the privilege against self-incrimination as a ground for not answering most of the questions she was asked. The debtor subsequently filed pleadings challenging the U. S. Trustee's or the bankruptcy trustee's summary of what happened at the meeting. In those pleadings, which are set out below, the debtor effectively agrees that she gave no information as to her debts, assets, transactions, or prior bankruptcy cases.

The bankruptcy trustee attempted to continue the meeting of creditors to November, and that provoked a subsequent firestorm of opposition from the debtor.

October 23, 2007

The bankruptcy trustee entered on the docket a note that the meeting of creditors was continued to November 1, 2007.

October 25–27, 2007

On October 25, 2007, the court entered orders denying (1) the U. S. Trustee's motion to hold the debtor in contempt, (2) the debtor's motion for a protective order, (3) the debtor's motion to disqualify attorney David Habenicht and any other staff from B. Stewart Jenkins and Associates, and (4) the debtor's motion to compel discovery. The court also denied the debtor's motion to quash and motion to dismiss her bankruptcy case that were filed on the same day as the hearings, which was October 18, 2007.

On October 26, 2007, the court again received returned mail addressed to the debtor at the post office box in Rossville, Georgia. The returned mail includes a routing slip with a note from the postal service stating that the box had been closed, the debtor was no longer receiving mail at that address, and the postal service did not have forwarding address.

The clerk's office certified that the orders resulting from the hearings on October 18, 2007 were mailed on October 27, 2007 to the new post office box address used by the debtor in the motions she filed on October 18, 2007.

October 30, 2007

The debtor filed a motion objecting to the continuation of the meeting of creditors to November 1, 2007. The motion states:

> Debtor, contends a 341 Meeting was held on October 18, 2007 at 11:00 A.M. Debtor, did in fact respond and address all questions ask by Assistant U. S. Trustee, William Sonnenburg, Trustee, Doug Johnson and Attorney Daniel Habenicht, who represents Theron L. Johnson.
>
> Debtor, contends the 341 Meeting was in fact adjourned, and therefore another meeting is *not* warranted. (Emphasis supplied)

Debtor, contends both the Assistant U. S. Trustee and Trustee are taking a back door approach to secretly conduct a 2004 Examination and deposition. Debtor, contends for the Assistant U. S. Trustee, staff member who was present the entire time during the 341 meeting to be given/intercept the original 341 Meeting tape/disk by hand from the meeting of creditors. This is a violation. (Emphasis supplied) The Trustee, did in fact hand the tape/disk over to the United States Department of Justice staff member who is associated with the Assistant U. S. Trustee Office. (Emphasis supplied)

Debtor, contends both the Assistant U. S. Trustee and Trustee are aware they are violating the United States Trustee Manual Volume 5; Chapter 5-2: Detecting Fraud and Abuse. Both, the Assistant U. S. Trustee and Trustee are conducting an investigation purely for the purpose of developing evidence to support a criminal referral. Debtor, contends this is a violation of the Debtor's due process and civil rights. **U. S. v. Unruh 855 F.2d 1363 (9th Cir. 1987), cert. denied, 488 U.S. (1987). Debtor contends under §5-2.1.5 Investigations Must Have Legitimate Civil Purpose. (Emphasis supplied)**

Debtor, contends criminal sanctions may not be threatened in the course of a civil proceeding. In which the Assistant U. S. Trustee has. (Emphasis supplied).

Debtor, contends she has been threatened in the course of a civil proceeding with criminal sanctions. (Emphasis supplied)

Debtor, contends she did in fact inform Court on _Thursday, October 18, 2007_ that the Motion for Contempt submitted by the Assistant U. S. Trustee indicated both fraud and abuse in the Motion. Debtor, contends anytime _fraud_ and _abuse_ as the law recognizes it is Criminal and _not_ Civil. (Emphasis supplied)

Debtor, contends the Assistant U. S. Trustee can sugar coat this case as sweet as he wants; but the bottom line is, the paralegals from his Office, the U. S. Trustee and other staff members in the case are certainly _not_ attending the 341 Meeting and Hearing of Motions for Civil purposes. Debtor, contends all the paralegals and legal assistants had steno pads taking notes during the 341 meeting. Afterwards, the Trustee did in fact give the original 341 Meeting tape/disk after the 341 meeting was adjourned to a staff member of the Assistant U. S. Trustee Office to possible transcribe. (Emphasis supplied) Debtor, contends for the Assistant U. S. Trustee, staff member to given the original tape/disk from the 341 Meeting is unconstitutional (Emphasis supplied)

Debtor, contends on _Thursday, October 18, 2007_ during open Court the Assistant U. S. Trustee told the Court, that this was a civil matter, and that if anything he believes or suspects the Debtor is the person who perhaps filed various bankruptcies and that he would perhaps would want the Court to sanction the Debtor for abusive filings, and not to be allowed a discharge in the case. Debtor, contends she is being unjustly accused, that there is absolutely nothing in this case that warrants the Debtor being sanctioned for anything. (Emphasis supplied)

Debtor, contends all documents shown to Debtor, during the 341 Meeting on Thursday, October 18, 2007 are irrelevant to this case, and carries no merit (Emphasis supplied)

Debtor, contends this case should be discharged or dismissed, and not be held open for sole purpose of the Assistant U. S. Trustee to conduct an investigation purely for the purpose of developing evidence to support a criminal referral. Debtor, contends this is in fact a violation of the debtor's due process and civil rights, that warrants a civil suit. (Emphasis added).

Debtor, contends it is uncertain during the 341 Meeting the Assistant U. S. Trustee presented to the Debtor an original bankruptcy case from out-of-state, that is believed was obtained by and through his office. It is uncertain as to why the United States Bankruptcy Court would provide an original bankruptcy case to the Department of Justice, Assistant U. S. Trustee, staff member and not a copy of such case. Debtor, contends it is uncertain how the document was obtained rather by word of mouth or subpoena (Emphasis supplied)

Debtor, contends when the 341 Meeting was in fact adjourned, and the tape/disk had been given to the Assistant U. S. Trustee, staff member. Assistant U. S. Trustee informed the Trustee, by stating we need to come back after the hearing of the Motions scheduled at 3:30 P.M. Reason being the Debtor's believes both were certain the Court was going to instruct the Debtor to take part in a Deposition and 2004 Examination, which mirror each other, and that _did not_ happen. Debtor, contends the Court did in fact ask the Assistant U. S. Trustee about the 341 Meeting and he did in fact tell the Court it took place. Debtor, contends the Assistant U. S. Trustee, was dishonest when he told the Court refused to answer any questions regarding her name or social security number. Debtor, did in fact inform the Court that simply was not true. Debtor, did in fact provide her name and social security number. The U. S. Trustee did _not_ tell the Court that neither he nor the Trustee scheduled a meeting immediately after the hearing of the Motions with the Debtor. Debtor, contends simply because the Debtor was not instructed to take part in the Deposition or 2004 Examination, being the Debtor raised the question that it would violate her due process and civil rights. Debtor, also cited a case from the _U. S. Trustee Manual under §5-2.1.5 Investigations Must Have Legitimate Civil Purpose_. Therefore, no meeting took place. Debtor, contends on her way out of the Bankruptcy Court she was in fact approached by the Trustee and they both went down to the 341 Meeting Room. Trustee, Doug Johnson told the Debtor the 341 Meeting was not adjourned and that he needed to schedule another meeting. Debtor, contends with reasonable certainty and in fact the 341 Meeting was adjourned. Debtor, contends with her being without counsel, doesn't give the Assistant U. S. Trustee or Trustee, Doug Johnson the right to violate the Debtor's rights. (Emphasis supplied)

Debtor, contends there was _no_ reason for the Trustee or the Assistant U. S. Trustee to reschedule a 341 Meeting, other than to harass the Debtor, Debtor, contends all creditors were notified to be present on _Thursday, October 18, 2007_, and only (one) creditor appeared, Attorney Daniel Habenicht for Theron L. Johnson for a small amount concerning _only_ $500.00 hundred dollars. (Emphasis supplied)

Debtor, contends the request for another 341 Meeting was never motion upon and filed with the Court, and therefore the meeting scheduled for Thursday, November 1, 2007 at 11:00 A.M. serves no purpose other than to harass the Debtor, and to secretly conduct a 2004 Examination or deposition, behind the Courts back (Emphasis supplied) Debtor, contends she have answered and responded to all questions during the 341 Meeting, and therefore another 341 Meeting is not warranted and that the Trustee, did in fact adjourn the 341 Meeting on Thursday, October 18, 2007 ending such meeting (Emphasis supplied)

Debtor, hereby objects to another 341 Meeting scheduled for Thursday, November 1, 2007 at 11:00 A.M. Debtor, hereby ask the Court to deny the request of the Trustee and Assistant U. S. Trustee directed to the Debtor to take part in such meeting. (Emphasis supplied)

October 31, 2007

The chapter 7 trustee filed a motion to compel the debtor to comply with § 521 of the bankruptcy code and Bankruptcy Rule 4002. The trustee also filed a motion to extend the time to file a complaint objecting to discharge or to determine dischargeability of a debt.

The U. S. Trustee filed the complaint commencing this adversary proceeding. The complaint seeks to deny the debtor's discharge.

<u>November 13, 2007</u>

The debtor filed an amended motion objecting to the meeting of creditors scheduled for November 1, 2007 and rescheduled to November 15, 2007.

<u>November 14, 2007</u>

The chapter 7 trustee filed a report stating that the meeting of creditors was concluded. The chapter 7 trustee stated that the debtor failed to attend a meeting of creditors until October 18, 2007, and then she invoked her Fifth Amendment right against self-incrimination as a ground for refusing to answer any question except for giving her name and social security number. According to the trustee, he continued the meeting to November 1, 2007 and then to November 15, 2007 due to the debtor's failure to cooperate and her statement that she intended to hire an attorney to represent her at the meeting of creditors. The trustee decided that continuing the meeting would be futile because the debtor objected, the debtor was unable to obtain a lawyer to represent her, and she continued to be reluctant to cooperate with the trustee.

<u>November 21, 2007</u>

The trustee's motion to compel the debtor to comply with § 521 and Rule 4002 was set for November 29, 2007, but the court entered an order that deferred any ruling on the motion until after a decision on the U. S. Trustee's complaint to deny the debtor's discharge.

<u>November 27, 2007</u>

On November 14, 2007, the chapter 7 trustee had filed a report cancelling the continued meeting of creditors previously continued to November 15, 2007. The debtor felt compelled to file a response to the trustee's report. The response states, in part:

Now Comes the Debtor and reports to the Court that she did not willful failure to appear at the §341 Meeting of Creditors scheduled for May 25, 2007, July 6, 2007, August 2, 2007, September 20, 2007 and October 18, 2007, as stated by Trustee Douglas R. Johnson. Debtor will hereby show the Court as follows:

Debtor, contends the Trustee knows exactly why Debtor was not present at the §341 Meetings; but have willfully failed to share with the court in his report.

Debtor, will hereby share with the Court what the Trustee has willfully failed to provide in his report, to attempt to bring prejudice against the Debtor before this Court. (Emphasis supplied)

Debtor, contends she is not reluctant to cooperate with the Trustee or U. S. Trustee. Both are simply not a ease because Debtor has been protecting her due process and civil rights in which both have repeatedly violated the Debtor's rights. (Emphasis added)

[In the next two paragraphs, the debtor states that lack of notice and miscommunication were the causes of her failure to appear at the meeting of creditors or other hearings.]

Debtor, conducted research and found that both the Trustee and U. S. Trustee were violating the Debtor's rights, and the Debtor filed a Motion for a Protective Order . . . . Therefore until the Motion was ruled upon no §341 Meeting of Creditors, 2004 Examination and Deposition were to take place. Therefore, the Debtor was not reluctant to cooperate. Debtor, was simply protecting her constitutional rights and due process. (Emphasis supplied)

[Debtor again cites the rule that an investigation by U. S. Trustee must have a legitimate civil purpose. Debtor continues the argument that the Assistant U. S. Trustee and the chapter 7 trustee were violating her rights. Debtor goes back to the argument that she failed to appear at certain times because she did not have notice, and she did actually appear on some of the dates listed in the chapter 7 trustee's report. ]

Debtor, contend the §341 Meeting of Creditors did in fact take place, but not the 2004 Examination and Deposition being those Motions and Objections were pending before the Court. Motion were heard on or around 3:30 P.M. on this same day, and Debtor put the Court on notice that her constitutional rights and due process are being violated by both the Trustee and Assistant U. S. Trustee, and such actions are still pending. Debtor, is not reluctant to cooperate, but simply protecting her constitutional rights and due process. (Emphasis supplied)

Debtor, contends on October 18, 2007 she not refuse to answer any questions (other than her name and social security number). Debtor, did in fact answer questions where she was born, she provided her birth date. Debtor, she has a constitutional right to assert the Fifth Amendment were warranted, especially when she believe her rights are being violated by the Trustee and Assistant U. S. Trustee. Therefore, the Trustee is quick to prejudice the Debtor for simply protecting her rights with telling the Court the Debtor is reluctant to cooperate.

Debtor, contends both the Trustee and Assistant U. S. Trustee, along with Attorney Daniel Habenicht are trying every way possible to prejudice the Debtor and for the Assistant U. S. Trustee to accuse the Debtor of abuse and fraud, which is certainly not civil and to go as far as to ask the Court to sanction the Debtor, when there is nothing that warrants such

sanctions, the Debtor, has every right to assert the Fifth Amendment especially being without Counsel and at a mere disadvantage.

Debtor, has on several occasions ask the Trustee and Assistant U. S. Trustee for strict proof of how Attorney Daniel Habenicht obtained such information to provide to the Trustee and Assistant U. S. Trustee and both have failed to do so.

Debtor, contends Attorney Daniel Habenicht client Theron L. Johnson did in fact establish a false case in Fulton Superior Court, Atlanta, Georgia November 2005, and told the Court that the Debtor waived her rights to have the case established and that he also lived in Georgia, which neither were true. Mr. Johnson did in fact served several false subpoenas against the Debtor to obtain certain documents he believed related to the Debtor in which Judge Jenny Kutner told Mr. Johnson that any information he obtained with any false subpoena's where in fact inadmissible. Debtor, contends yet this is the same information Attorney Daniel Habenicht share with the Trustee and Assistant U. S. Trustee, which warrant all such information and documents be stricken from record. (Emphasis supplied)

Debtor, contends both Trustee and Assistant U. S. Trustee did in fact violate the Debtor's right by secretly attempting to schedule another §341 Meeting of Creditors, but really trying to conduct a 2004 Examination and Deposition on November 1, 2007 and November 15, 2007. Debtor, did in fact file motions objecting to such harassment, and the fact the Debtor put the Court on notice of wrong doing, ran to the Court house steps and filed a Report to once again bring prejudice against the Debtor, that she reluctant fails to cooperate and she was not going to retain an attorney. Debtor, had every intention of retaining an attorney but when the Trustee participates in Acts of Concert and Participation by enlightening the prospective Counsel about the case by calling her office before the Debtor has had an opportunity to communicate directly with the Attorney warrants a conflict of interest. Therefore this would be fruitless for the Debtor to obtain this attorney when the Trustee has brought prejudice against the Debtor. (Emphasis supplied)

Debtor, contends both Trustee and Assistant Trustee are simply mad because the Debtor refuses to let both of them sucker punch her constitutional rights and due process. (Emphasis supplied)

Debtor, is being unjustly accused, and the fact she is without Counsel puts her as mere disadvantage for both the Trustee and Assistant U. S. Trustee to violate her rights and due process.

Debtor, contends Trustee did in fact adjourn the §341 Meeting of Creditors on October 18, 2007, and did not say or state such meeting was continued, and therefore when any meeting or hearing is adjourned it's the Debtor's understanding it's concluded. Both the Trustee and Assistant U. S. Trustee, did in fact violate the Debtor's right and that's why the Trustee ran to the Court house steps to cancel the §341 Meeting of Creditors on November 15, 2007, plus the fact how can you conduct such meeting and you've failed to notify the creditors. Debtor, contends being Trustee knew upon Motion objecting to such meeting was a means of harassing and oppressing the Debtor and to slip their way through the back door for a 2004 Examination and Deposition, which is certainly not warranted other than to harass the Debtor, and that warrants a Civil Law Suit (Emphasis supplied)

Debtor, contends and to put the Court on notice that she has not been reluctant to cooperate, as stated by the Trustee. Debtor, contends she simply has a constitutional right

to protect herself as well as her due process, which both the Trustee and Assistant U. S.
Trustee have no intentions of doing so. (Emphasis supplied).

As such, the Debtor would report to the Court that the §341 Meeting of Creditors was in
fact adjourned and concluded on October 18, 2007, and that the November 1 2007 and
November 15, 2007 meeting was only to gather additional evidence against Debtor and
warranted cancellation. Debtor, contends the Trustee has certainly painted a picture to the
Court that she is reluctant to cooperate, which is certainly not true (Emphasis supplied)

The debtor also filed a separate response to the chapter 7 trustee's motion to compel her

to comply with § 521 of the bankruptcy code and bankruptcy rule 4002. The response duplicates some

of the statements made in the response to the trustee's report cancelling the meeting of creditors. The

response to the motion to compel also states:

Debtor, contends Trustee Douglas Johnson did in fact during the §341 Meeting of
Creditors on October 18, 2007 ask the Debtor from which he read a bankruptcy schedule
from A, B, C, D, E, F, G, H, I, J, K, Statistical Summary of Liabilities, Statement of
Financial Affairs about question if the debtor contributed to KEOGH, and other related
schedules and statements, and the Debtor took the fifth amendment. Court also told
Trustee and Assistant U. S. Trustee on October 18, 2007 that Debtor has the right to take
the fifth, and to also no submit documents that could possibly be incriminating. Court
instructed both Trustee and Assistant U. S. Trustee to file a Motion showing otherwise that
the Debtor couldn't take the fifth, and once again the Trustee is taking another back door
approach and perhaps even a window this time to get the Court to order the Debtor to
compel such documents. Debtor, hereby request the Trustee's motion be denied with
prejudice. Debtor, contends she has been cooperative with the Trustee, but the fact the
debtor is protecting her constitutional rights and is without Counsel this is the Trustee first
defense to say the Debtor is not cooperative. Debtor, has a right not to submit certain
documents and to do so against her will be a direct violation of Debtor's fifth amendment
rights, which certainly warrants a civil law suit so big, that will need the aid of the Federal
Reserve to help may the judgment (emphasis supplied). Debtor, has told the Trustee
everything he needs to know and has requested of the Debtor. Debtor, contends both the
Trustee and Assistant U. S. Trustee are riding dirty, and bringing undue prejudice against
the Debtor. (Emphasis supplied).

November 28, 2007

The debtor filed a motion to strike and make inadmissible all names, documents, and

cases presented to the debtor during the meeting of creditors on October 18, 2007. The debtor repeats

her earlier allegations and arguments that Theron L. Johnson, the client of attorney Daniel Habenicht,

obtained information in a Georgia state court proceeding by using a false subpoena, that the state court

judge ruled the information was inadmissible, that attorney Habenicht provided the trustee and the

Assistant U. S. Trustee and staff the same illegally obtained information, and that the information should

be inadmissible in her bankruptcy case. The debtor goes on to allege that the state court judge advised her to obtain an order in Tennessee to protect her and her children from harm by Theron L. Johnson.

The debtor filed another motion for appointment of counsel. The motion asserts the debtor is entitled to defense counsel because the U. S. Trustee's complaint to deny discharge alleges fraud and abuse. The motion takes up again the debtor's allegations that the chapter 7 trustee wronged the debtor by rescheduling or continuing the meeting of creditors to November 1, 2007 and November 15, 2007, that she was saved from the alleged attempt to gather more information and possibly a confession only by her notice to the court of the trustee's wrongdoing, that the continuation of the meeting of creditors carried its own badge of intimidation and was intended only to harass the debtor since she was without counsel, that the rescheduling or continuation of the meeting of creditors  took a heavy toll on the debtor's liberty and traded on the weakness of the debtor.

November 29, 2007

The debtor filed a motion for more definite statement of court's order entered on November 21,2007. The order deferred a ruling on the trustee's motion to compel the debtor to comply with bankruptcy code section 521 and bankruptcy rule 4002. The debtor's motion for a more definite statement begins with the statement that her time to object to the proposed order had not expired when the court entered its order. The debtor then goes on to allege facts making it unclear to her when her time to respond began or ended. Next, the motion states:

> Debtor, contends she did not forfeit or did not waive her rights to object to the Trustee's Motion to Compel or Trustee's Motion to Extend Time to File Complaint Objecting Debtor's Discharge; and therefore there should have been allowed an equal opportunity before the Court to be heard. Debtor, contends with an Order being entered, it raises another question of the Debtor's right to appeal, wherein the Debtor's objections and responses haven't been included in the order.

> Debtor, hereby move the Court to Alter and Amend such Order to reflect that the Debtor, did in fact filed her objections and responses timely and that a hearing should have been held to allow the Debtor an opportunity to be heard; and that the Debtor's rights have been injured.

> Debtor, hereby move the Court to also be granted an Order showing that her objections and responses to Trustee's Motions were timely filed; and that the Debtor's appeal rights are preserved; and the Court will allow the Debtor's objections and responses to be accepted as filed; and be allowed to use in her defense, if a new hearing date and time is set regarding Trustee's Motion to Compel and Motion to Extend Time To File Complaint

Objecting Debtor's Discharge, to allow the Debtor an opportunity to be heard. (Emphasis supplied)

December 27, 2007

The pending motions and responses were set for hearing on December 27, 2007 after some of them were postponed from December 13, 2007. The postponement occurred because the court granted the debtor's motion to reschedule the hearings on the ground that she had a hearing previously set in another court at the same time.

The matters that came on for hearing were the bankruptcy trustee's motion to extend the time for filing complaints and the debtor's response, the debtor's motion for a more definite statement of the order entered by the court on November 21, 2007, the debtor's motion for appointment of counsel, the debtor's motion to strike and make inadmissible all names, documents, and cases presented to the debtor during the meeting of creditors on October 18, 2007, and the debtor's response to the trustee's report that the meeting of creditors was concluded.

The debtor also filed a motion to alter or amend the order of August 2, 2007 allowing the U. S. Trustee to file documents under seal. The motion asserts that the debtor was not given an opportunity to be heard on the motion due to miscommunication. The debtor also states that she thought a ruling on the motion was deferred. The debtor requests an opportunity to be heard "to establish a foundation for her defense." The debtor goes on the argue that she cannot build a foundation for her defense if she does not know what information or documents have been sealed. The debtor then requests the right to review all documents "the United States Trustee is simply trying to hide and not allow the Debtor Equal Review."

December 28, 2007

The court entered an order denying the bankruptcy trustee's motion to extend the time to file complaints objecting to discharge or to determine dischargeability of a debt. The court entered a separate order denying the debtor's motion to strike, denying the debtor's motion for appointment of an attorney, and declaring moot the debtor's motion for a more definite statement of the court's order entered in November 21, 2007.

<u>February 6, 2008</u>

   The debtor filed a motion to alter or amend the order entered by the court on October 2, 2007. The gist of the motion is that the order should not have extended the time for filing a complaint objecting to discharge or to determine the dischargeability of a particular debt. The motion requests that it be set for hearing on February 21, 2008.

<div align="center">The U. S. Trustee's Complaint</div>

<u>October 31– December 12, 2007</u>

   The U. S. Trustee's complaint to deny the debtor's discharge was filed on October 31, 2007. The debtor filed an answer on December 3, 2007. On December 12, 2007, the court entered a routine scheduling order setting a pre-trial conference for January 9, 2008.

<u>December 27, 2007</u>

   The debtor filed a motion to continue the pre-trial conference and for a more definite statement of the scheduling order. The debtor's motion states:

> Respondent/Debtor has a conflict with the date and time scheduled for the pre-trial conference in this adversary proceeding by Richard F. Clippard, United States Trustee. Respondent/Debtor has another obligation in another court that was original scheduled for December 19, 2007; but was recently changed by Attorney Daniel Habenicht to January 9, 2008 at 8:30 a.m. Therefore the date of the pre-trial conference, conflicts with that Court date; and hereby request that the hearing be schedule to another date and time.

> Respondent/Debtor, contends a hearing was scheduled in another Court for December 19, 2007; but Attorney Daniel Habenicht on December 13, 2007 in open Court told the Debtor he called and ask Judge to change the date from December 19, 2007 to January 9, 2008. Then on December 13, 2007 Attorney Habenicht called Trustee Doug Johnson and with reasonable certainty to choose the same date of January 9, 2008 to purposely cause conflict an burden upon the Respondent/Debtor; and to simply bring bad faith, to annoy, embarrass and to oppress the Respondent/Debtor. Respondent/Debtor, contends this is the second time this has happened. It happened once before on December 13, 2007. Attorney Habenicht scheduled a hearing in another Court for December 13, 2007; and with reasonable certainty both he and Trustee Doug Johnson communicated with each other; and chose the same date of December 13, 2007 for the Extended Time Hearing to purposely cause conflict and burden upon the Respondent/Debtor. Respondent/Debtor contends with reasonable certainty Attorney Daniel Habenicet, Trustee Doug Johnson, United States Trustee Richard Clippard are all participating in Acts of Concert and Participation, which warrants sanctions and a complaint being filed with the Board of Professional Responsibility, Tennessee Supreme Court and the United States Supreme Court. (Emphasis Supplied)

> Respondent/Debtor, contends a continuance is certainly warranted. Debtor, simply can not be in two different Courts at the same time. Debtor original date in the other Court was

December 19, 2007; but with the help of Attorney Daniel Habenicht once again has help to cause conflict with this Court and against the Debtor. Debtor, contends Attorney Habenicht is purposely causing conflict in an effort to win this hearing, if Debtor isn't present in the Petition for Custody. Attorney Habenicht is purposely trying every way possible to help put the Debtor in jail so his client can obtain custody of her children; and by working closely with Trustee Doug Johnson and United States Trustee Richard Clippard and Assistant United States Trustee are all participating in Acts of Concert and Participation. (Emphasis Supplied)

Respondent/Debtor, contends how can this Court sign and have an ordered entered on the docket without the Debtor ever being notified to come to Court or an opportunity to be heard in open Court regarding a pre-trial conference in this adversary proceedings? Debtor, contends the United States Trustee, Richard F. Clippard failed to notify the Debtor or to provide a copy of his request to the Clerks Office to a pre-trial date. Debtor, contends there is deliberate indifference; and the likelihood of her having any fair hearings or trial is unlikely. Debtor, contends she was told by this Court on June 14, 2007 that all request must be a written request to this Court. (Emphasis request)

Respondent/Debtor, contends she is without Counsel and that she is being taken advantage of by this Court, United States Trustee Richard F. Clippard and the Assistant United States Trustee Williams R. Sonnenburg, Trustee Douglas Johnson and Attorney Daniel Habenicht, (Emphasis Supplied)

Respondent/Debtor, contends Attorney Daniel Habenicht did in fact approach her up close to her face; and made threatening comments to the Debtor on December 13, 2007; and the Debtor is in fact in fear and is asking this Court for a Protective Order against Attorney Daniel Habenicht immediately! (Emphasis Supplied) Failure to put something in place could result in harm being brought to the Respondent/Debtor.

Respondent/Debtor, contends she put the Board of Professional Responsibility on notice about Attorney Habenicht conduct and behavior and he has become very angry and is personally harassing the Respondent/Debtor. (Emphasis Supplied)

The court granted the continuance and re-scheduled the pre-trial conference to January 16, 2008. The

court denied the other requests with prejudice.

January 15, 2008

On the day before the scheduled pre-trial conference the United States Trustee filed a

motion for summary judgment.

The debtor filed (1) a motion to continue the pre-trial conference set for the next day; (2)

a motion to dismiss the complaint; (3) a motion to suppress evidence; (4) motion for a jury trial; (5) a

notice of affidavit; (6) an affidavit.

The motion to continue the pre-trial conference stated:

Respondent, contends discovery is incomplete; and Respondent has not been allowed enough time to build a foundation for her defense. (Emphasis supplied)

Respondent, contends several [motions] have been filed that warrant review and ruling before Pre-Trial Conference should take place, if any.

The debtor's motion to suppress evidence makes the same arguments previously made by the debtor – that Theron Johnson obtained the evidence by illegal or improper methods during litigation with the debtor in the Georgia state courts, that the state court judge in Georgia declared the evidence to be inadmissible, that Mr. Johnson's attorney, Daniel Habenicht, tipped off the chapter 7 trustee or the Assistant U. S. Trustee so that someone from the U. S. Trustee's office would be present at the meeting of creditors, that Attorney Habenicht furnished the prior case information to the trustee or Assistance U. S Trustee or a staff member, that Attorney Habenicht's  presence at the meeting of creditors is evidence of this alleged wrongdoing, that the actions of Attorney Habenicht and his client were taken solely to obtain an advantage in state court litigation concerning child custody.

The motion to dismiss the complaint asserts that the complaint was filed after the deadline for filing complaints. The motion also raises the debtor's repeated arguments that all the actions of the chapter 7 trustee and the United States Trustee were simply to harass the debtor or discover grounds for criminal charges and were not legitimately concerned with administration of the bankruptcy case.

The date stamps on the motions and affidavits filed by the debtor show that they were all filed within a few minutes after 4:00 p.m. on January 15, 2008.

January 16, 2008

The court held the pre-trial conference as scheduled on January 16, 2008 at 10:30 a.m., and the debtor attended. The court denied the motion to continue the pre-trial conference that the debtor filed late in the afternoon of the day before. Further, the motion was without merit and reflected the debtor's misunderstanding of the trial process. The debtor insisted on arguing the merits of her other motions that were filed late on the afternoon of the day before. The court does not mean that she argued the merits of the motions for the purpose of scheduling. She argued the merits for the purpose of obtaining an immediate ruling. The court attempted to explain to the debtor this was not the purpose of a pre-trial conference. Nevertheless, the debtor insisted on being heard on the merits.

January 23, 2008

As a result of the pre-trial conference, the court entered an order and notice of trial. The order set the trial for June 11, 2008 and set a number of deadlines for pre-trial preparations and pleadings – ten days after the hearing to identify potential witnesses, discovery to be completed not later than March 18, 2008, all dispositive motions to be filed at least 30 days before the trial date, final pre-trial conference on June 4, 2008 if needed, and the parties' exhibit list due to the court on June 6, 2008.

The court also entered an order granting an oral motion made by the United States Trustee at the pre-trial conference. The order allowed the U. S. Trustee to submit to the clerk copies of certain documents containing complete social security numbers that were allegedly used by debtor in prior bankruptcy cases. The order also required the U. S. Trustee to provide the debtor with exact duplicates of any such documents submitted to the court.

January 28, 2008

The debtor filed the motion to recuse that is the subject of this memorandum. Before setting out the allegations and arguments in the motion to recuse, however, the court needs to set out the contents of several pleadings filed by the debtor on February 6, 2008. These are relevant because they relate to the pre-trial conference that is the main basis of the motion to recuse. They also relate to the debtor's method of litigation.

February 6, 2008

The debtor filed a motion to alter or amend the order and notice of trial entered on January 23, 2008. The motion to alter or amend states:

> Respondent, contends on January 16, 2008 during the Pre-Trial Conference the issue was raised as well as objection by the Respondent rather this proceeding was a core proceeding. The Court ruled that this adversary proceeding was a core proceeding. Judge Stinnett, went a step further to say to the Respondent, if she wasn't in agreement that this proceeding is a core proceeding the you could file an appeal and request a Writ of Reference. Judge Stinnett, also stated if you elect to file an appeal, not only will you be wasting this Court's time, but also the other Court/District Court's time. Respondent, contends this could be the reason whey the omission is missing from the January 23, 2008 order. Failure not to purposely omit such ruling is paramount, and in fact injuring my due process and constitutional rights to file an appeal if warranted. Judge Stinnett knows if it's not in the order, then how can it be appealed. Once again Respondent, contends this kind of behaviour and conduct represents personal bias and prejudice against the Respondent. (Emphasis Supplied)

Respondent, contends to file an appeal the Court errered when it failed to include in the order that this adversary proceeding is a core proceeding, and that if the Respondent wasn't in agreement she would have a right to appeal and to request a Writ of Reference. Respondent, contends being that such ruling is not included in the order, this error do in fact violates the Respondent's due process, being the ruling is not in the order.

Respondent, contends during the Pre-Trial Conference the issue was raised and also argument heard relating to the Motion to Demand A Jury Trial. In which Judge Stinnett flat out denied the Respondent her constitutional right, but also errered in putting this ruling in the order. Respondent, also states that Judge Stinnett once again said that the Respondent will not only be wasting his time for a Jury Trial, but also the Court's. Respondent, contends she has a right to request and be granted a Jury Trial if warranted. Respondent, contends for this Court to purposely leave the ruling made out of the Order violates her due process and constitutional rights. Respondent, contends, because she is without Counsel doesn't give this Court the right to violate the Respondents due process and constitutional because there is personal bias and prejudice against the Respondent. (Emphasis Supplied)

Respondent, contends serious errers have purposely occurred in the January 23, 2008 order that violates the Respondent's due process and constitutional rights to file an appeal. Respondent, contends Judge Stinnett is aware if it's not in the order, then the issue cannot be appealed. Respondent contends and you do not have to be a lawyer to know that. (Emphasis Supplied)

Respondent, contends Judge Stinnett did in fact rule that this adversary proceeding is a core proceeding, and the Respondent, did in fact object, and would like to have an opportunity to file and appeal is warranted, but Respondent's due process is being injured, because of omission of the ruling that was made by Judge Stinnett, during the Pre-Trial Conference in which an order was entered on January 23, 2008, that doesn't reflect such ruling.

Respondent, contends the January 23, 2008 Order warrants being either Alter or Amend to include all Judge Stinnett ruling, wherein the Respondent, can exercise her due process and constitutional right to file an appeal on Judge Stinnett's order if warranted. (Emphasis Supplied)

Respondent, also raised the issue of the Adversary Proceeding and Summary Judgment not being filed time and jurisdiction was also a concern, but this Court simply brushed it off as if what the Respondent, had to say was important or the fact she brought to the attention of the Court; but simply do not want to enforce the law. Respondent, contends under Federal Rule Civil Procedure 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action.") Respondent, contends there was personal bias, prejudice, deliberate indifference, favor of the plaintiff, as it has also been displayed in the order in which omission of the issues that were raised and ruled upon are not in the order. Respondent, contends too simply and purposely keep the Respondent, from exercising her due process and constitutional rights to file an appeal, is a direct violation of her due process and constitutional right. (Emphasis Supplied)

Respondent, contends she also raised the issue that the Pre-Trial Conference had been prejudice and the likelihood of the Respondent having any fair hearings or trial is highly unlikely. Judge Stinnett, did in fact respond and said this case is not prejudiced; and the Respondent, did in fact tell the Court, it allowed Plaintiff to raise prejudicial evidence

during the Pre-Trial, and that the Court did not allow the Respondent to object or rebutt statement/comments made by the Plaintiff. Once, again the ruling the this case is not prejudice was also purposely omitted from the January 23, 2008 order, because of personal bias and prejudice as well as Respondent not having Counsel and the fact this Court is under the impression it can violate the Respondent's rights, and she not have a say about it. Respondent, she stand firm behind the entire case is prejudice (Emphasis Supplied)

Respondent, contends she also raised the issue during the Pre-Trial Conference that the statute of limitation was expired on all the cases the Plaintiff has before the Court, and Judge Stinnett, rule otherwise but also filed to include such ruling that's paramount in his order. Respondent's once again her due process and constitutional rights, as well as her appeals rights are being injured under the direction of Judge Stinnett because of personal bias and prejudice against the Respondent. (Emphasis Supplied).

The debtor also filed a response and objection to the U. S. Trustee' motion for summary judgment and a supporting brief.  The debtor spends the first few paragraphs arguing that the complaint should be dismissed as untimely. The debtor is essentially arguing that the complaint was untimely because the order extending the time is void as having been entered without a motion or proof of equitable grounds for granting an extension after the time expired.

Next, the debtor takes up again the argument that any information regarding prior bankruptcy cases, which she may or may not have filed, should be suppressed because attorney Daniel Habenicht or his client obtained the evidence by illegal means and furnished it to the U. S. Trustee, and he cannot use evidence obtained illegally by a third person and cannot rely on the evidence as grounds for an independent investigation. The debtor goes on to repeat the argument that any contact between attorney Habenicht and the Assistant U. S. Trustee or staff, the chapter 13 trustee, or the chapter 7 trustee amounted to unethical or illegal *ex parte* communication. The following excerpt is from the debtor's brief in support of the response and objection to the motion for summary judgment.

Respondent, contends this case has no merits period. Summary judgment has been filed untimely, but yet the Plaintiff still run to the Court house steps under false pretense to the Court to extend the time to filed his complaint when he knew the statute had expired several months before raising the issue before the Court. Respondent, contends the Plaintiff believes he's above the law to extend the time to file his complaint for failure on his part to file a timely motion. Respondent, contends as a mater of law and the Plaintiff must also adhere to the law regardless if he's a trustee that the Court simply can invoke its equitable tolling powers for the Plaintiff once the bar date has expired, and this case warrants an immediate dismissal with prejudice. Respondent, this Court do not have subject matter jurisdiction on any of the bankruptcy cases the Plaintiff is using against the Respondent especially any out-of-state, and the bottom line this case is ripe for dismissal with prejudice.

After this part of the brief, the debtor again takes up the argument that the U. S. Trustee's actions are illegal because they are based on evidence illegally obtained by attorney Daniel Habenicht or his client and furnished to the U. S. Trustee. According to the debtor, the U. S. Trustee investigated and continues to seek information from the debtor solely for the purpose of building a criminal case against the debtor. The debtor goes on to argue that she has done nothing to prevent creditors from learning about her assets because she can claim the Fifth Amendment and only one creditor has made an appearance. The debtor also argues that the ability of a bankruptcy trustee or the U. S. Trustee to investigate her financial affairs and prior bankruptcies without talking to her is a valid excuse for her to refusal to provide any information or answer any questions. The debtor also contends that invoking her Fifth Amendment privilege against self-incrimination relieved her from the duty to file schedules that were due long before she invoked the privilege. The debtor's brief argues that she can refuse to file schedules because the U. S. Trustee could check the schedules for information that does not agree with facts found by his investigation and then use the inconsistency against her as ground for denying her discharge. The underlying theory may be that the objection to discharge is a criminal proceeding, but it seems to be a broader theory. In this regard, the debtor takes up again the argument that since the U. S. Trustee mentioned possible fraud and abuse of the bankruptcy law, then any further investigation was purely for criminal purposes and was not proper.

> As well as accusing the Respondent of serial filer which again is abuse and abuse is not considered civil, but criminal. Trustee Manual clearly states he cannot threaten, and so far the Plaintiff has repeatedly done so. Plaintiff, raised the issue of serial filer and abuse in his Adversary Proceeding, and now to say in his Summary Judgment that he's being prejudiced by the inability to determine whether or not the case is an abuse of the bankruptcy process when he has already accused the Respondent. Respondent, contends once again she's being unjustly accused without any strict proof by the Plaintiff. Respondent, contends the Plaintiff is on a fishing expedition and have failed to provide the Respondent strict proof of any an all allegations, and how such information was obtained as well as its source. Respondent, contends the Plaintiff Summary Judgment is without merit. The allegations in the case are irrelevant and frivolous as well as scandalous. Respondent, contends the Plaintiff has obtained original documents, and did not file on record a copy of the subpoena or letter submitted to request such information, but use the original document during the 341 Meeting of Creditors.  Respondent, contends, the Plaintiff is withholding evidence, and evidence is in fact being tampered with by the Plaintiff's Paralegal Specialists . . . in which they have sworn under oath, the Plaintiff and Paralegal Specialists are held accountable for such behavior and conduct 000000. (Emphasis Supplied)

Respondent, hereby request to move the Court to find "*DECLARATION OF TIFFANY E. MARGRAVE* to be in bad faith, and to strike such declaration from the record with prejudice. Respondent, contends Ms. Margrave used information and obtained certain document that she was made aware that were obtained under false statement by Attorney Daniel Habenicht client Theron L. Johnson, when he established a false case in Fulton County Superior Court and used false subpoenas to obtain documents and information. Judge Kutner in the case told Mr. Johnson any and all information obtained is inadmissible in Court, and Ms. Margrave has taken upon herself to use the information to obtain these same documents that were obtained by using false statements which is a direct violation of the fourth amendment and falls under the Exclusionary Rule of illegally obtained evidence. Therefore, the Respondent, contends such filing of Ms. Margrave declaration is in bad faith and hereby asks the court that it be stricken from the record as bad faith with prejudice, and for the Court to enter an order to reflect such within seven (7) to ten (10) days. . . .

. . . Plaintiff, knew the statute of limitation was expired; and it simply was no oversight that the bar date had expired. Being the Plaintiff, has repeatedly told the Court he access to the "PACER" system which displays the bar date, and he also had electronic access to EFC data base to check the bar date, but took it upon himself to mislead the Court and try and mislead the Respondent. Respondent, contends the Plaintiff has been in practice of law for many years and know that once the statute of limitations has expired that the Judge cannot simply invoke his equitable tolling powers, but mislead the Court into thinking and without any verification the Court granted the Plaintiff oral motion strictly based on the bar date being valid when in all essence was expired. Plaintiff, is so eager to go after Respondent, that he's even willing to break the Federal Civil Procedures Rules and his own U. S. Trustee Procedure Manual that govern the laws that have been established, to keep slick Plaintiff's such as himself for abusing debtor's rights. . . . Respondent, contends for the Plaintiff to bring and raise such issues before the Court he has failed to appear at any hearings or Pre-Trial Conference. Respondent, contends she would still be required to be present in Court if she was represented by Counsel, so why isn't Richard F. Clippard, Plaintiff required. After all, he has brought and raised up and even accused the Respondent of serious wrong doings, but have repeatedly failed to show up in Court, other than the 341 Meeting of Creditors, when the Respondent ask bout his presence and the U. S. Assistant Trustee Williams Sonnenburg, said this is a public forum, and it's not need to know who the people are, Respondent, contends she believe Richard Clippard was also present in the audience during the October 18, 2007 hearing, once again sitting in the public forum, but failed to address the Court or sit with his Counsel as the Counsel table. Respondent, contends this behavior and conduct warrants this case being dismissed with prejudice. Respondent, contends why the Court hasn't issued a show cause order against Plaintiff, why he hasn't taken part in any hearings or Pre-Trial Conference. Respondent, contends simply because he knows this case has no merits and that it's before the Court under false statement and pretense. Respondent contends once again deliberate indifference, and favor of the Plaintiff and Plaintiff's Counsel. Respondent, contends if the Plaintiff is going to bring and raise issue before the Court, then he needs to be present in the Court during all hearings . . . .

WHEREFORE, for the reasons stated above, Respondent, moves this Court to deny the Plaintiff Summary Judgment and dismiss the case with prejudice. . . . Respondent, contends this Summary Judgment warrants dismissal sand to impose sanctions and civil penalties against Plaintiff Richard F. Clippard, Plaintiff's Counsel William Sonnenburg, Plaintiff's Paralegal Specialists . . . and Trustee Douglas Johnson for behavior and conduct unbecoming on a Trustee and Paralegal Specialists . . . .

Finally, the debtor also filed on February 6, 2008 a motion to dismiss the U. S. Trustee's summary judgment motion. The motion to dismiss the summary judgment motion generally repeats arguments already made by the debtor, but some of the arguments add details to allegations previously made and are set out below.

. . . After all, in the Plaintiff's Motion for Contempt against the Respondent, the Plaintiff stated his purpose was only routine as to why he attended the 341 Meeting of Creditors. Really? Respondent, contends that's simply not true. His purpose was to conduct an investigation purely for the purpose of developing evidence to use against Respondent, with reasonable certainty warrants entrapment, against the Respondent. (Emphasis Supplied) . . . Respondent, contends the Plaintiff is concealing evidence from the 341 Meeting Transcript, which is a direct violation of the Respondent Due Process and constitutional rights (Emphasis Supplied) Respondent, contends this case has been prejudice from the very beginning with reasonable certainty by Attorney Habenicht calling or communicating with prior Trustee Kenneth Still, a fact that Attorney Habenicht did in fact during a hearing in Hamilton County Juvenile Court, that the Plaintiff did in fact call him and they talked, and on May 25, 2007 Attorney Habenicht shows up at the 341 Meeting of Creditors to make it official and spoon feed the same information he had already provided to both Kenneth Still, Former Trustee and the Plaintiff. Respondent, that's the reason Kenneth Still terminated from the Case in April 2007, and the Plaintiff pick up the case, which once again wasn't a routine for the Trustee to take part in 341 Meeting of Creditors as the Plaintiff stated in his Motion for Contempt against Respondent. . . .

. . .  Respondent, contends Plaintiff's Paralegal Specialists . . . all have violated the Respondent's due process and constitutional rights. Respondent, contends all the Paralegal Specialist took part in serving the Respondent a subpoena, and therefore should never hand any evidence against Respondent, which is a conflict of interest, that also warrants evidence being tampered with. Respondent, contends subsection 341 Meeting of Creditors Transcript and the (Original Bankruptcy Case File) from the State of Maryland Case #-1-19948 is a perfect example, which also warrants this proceeding being dismissed with prejudice. (Emphasis Supplied)

Respondent, there is no subpoena on the record of the Plaintiff requesting the Original Bankruptcy Case File from the State of Maryland. In which the Respondent, did in fact raise the issue during the 341 Meeting of Creditors. Respondent, contends the Plaintiff failed to provide the Respondent a copy of such subpoena as well as letter dated July 9, 2007 to Paralegal Specialist Tiffany Margrave where she requested copies of complete files for case numbers 95-70308, 96-63162, 96-74855 and 97-66676 from Northern District of Georgia. Respondent, did in fact on an oral motion moved the Court for discovery against Plaintiff on June 14, 2007, but was denied. Therefore, with all these elements violating the Respondents due process and constitutional rights once again warrants the proceeding being dismissed.

Respondent, did in fact raise the issue of jurisdiction and the Motion for Summary Judgment as well the Adversary Proceeding being filed untimely, but this Court simply brushed the issue off, and ruled that it was filed timely, but failed to enter such ruling in the order dated January 23, 2008. . . .

The Motion for Recusal

This brings the court back to the debtor's motion for recusal based primarily on the pre-trial conference on January 16, 2008. The motion to recuse was filed on January 28, 2008. The motion states:

Respondent, contends on Wednesday, January 16, 2008 during the Adversary Pre-Trial Conference which Judge Stinnett presided over, Judge Stinnett, purposely displayed extreme prejudice, purposely displayed extreme personal bias, purposely displayed extreme deliberate indifference, repeatedly favored the Plaintiff, personally displayed extreme prejudgment in the case, purposely and deliberately spoon feed advice to the United States Assistant Trustee William Sonnenburg on out-of-state cases in this proceeding. Judge Stinnett, was acting like a lawyer rather than a Judicial Official of the Court. Respondent, contends Judge Stinnett was very, very discourteous; and displayed unprofessional behavior and conduct during the Pre-Trial conference that was simply unfair; and the Respondent did not have a fair chance to address the Court; and to raise significant issues that were in fact paramount in this proceeding. Respondent, contends Judge Stinnett discourtesy behavior and conduct warrants immediate recusal/disqualification from this entire adversary proceeding, summary judgment proceeding; and the bankruptcy proceeding that's pending, any and all hearings, any additional pre-trial conference status hearings or any and all trials. Respondent contends Judge Stinnett behavior and conduct is a direct violation of Judicial Conduct Code. (Emphasis supplied)

Respondent, contends she simply cannot and will not have any fair hearings or trial before Judge Stinnett. Respondent, contends Judge Stinnett has brought extreme prejudice, extreme personal bias; and extreme prejudgment during the pre-trial conference that warrants immediate recusal/disqualification from this entire proceeding. Respondent, contends during the pre-trial conference Judge Stinnett did in fact tell the Respondent numerous times that she was wasting his time as well as the Courts time, filing motions in this proceeding. Respondent, contends all motions that she filed are paramount in this case; and that they are not filed simply to waste Judge Stinnett time or the Courts. Respondent, contends she has every right to file motions that are of great significance in this proceeding; and for Judge Stinnett to say otherwise and the fact he hadn't read the motions is simply personal bias and prejudice. Respondent, contends being that Judge Stinnett has said numerous times that the Respondent is wasting his time as well as the Courts time, then this entire proceeding is certainly not ripe for review before Judge Stinnett or this Court. (Emphasis Supplied)

Respondent, contends she has a constitutional right to have a fair pre-trial conference, fair hearings, fair status conferences; and fair trial. Respondent, contends during the pre-trial conference it certainly appeared as if Judge Stinnett have already decided this case; and that he's going to rule in Plaintiff's favor. Judge Stinnett, conducted the pre-trial conference as if Respondent wasn't present; and every time she attempted to say something or object, Judge Stinnett would raise his voice in a harsh and humiliating tone; and demand the Respondent to sit down. (Emphasis supplied)

Respondent, contends on numerous occasions during the pre-trial conference she attempted to raise issues of significance and that were certainly paramount; and Judge Stinnett would repeatedly cut her off while trying to explain to the court; and often would tell her to sit down in a very harsh and stern tone, that was very disrespectful, humiliating and insulting to the Respondent; but offered up the most respect to the United States Assistant Trustee any time he addressed the Court. Respondent, contends Judge Stinnett allowed private Trustee Douglas Johnson to take part in the adversary proceeding and he shouldn't have being Trustee Johnson is not a part of the Adversary Proceeding and that

he wasn't a witness in the proceeding, which again brings prejudice and personal bias to this proceeding. (Emphasis Supplied)

Respondent, contends she made every attempt to raise several issues during the pre-trial conference; but Judge Stinnett repeatedly failed and refused the Respondent such opportunity to be heard before the Court; but extended every opportunity for the United States Assistant Trustee, William Sonnenburg to address the court entirely, as if what the Respondent had to say wasn't important or had any significance. Respondent, contends because she is without Counsel certainly shouldn't give Judge Stinnett the right to violate the Respondent's due process and constitutional rights and opportunity to be heard; and to have fair hearings and pre-trial conference. Respondent, contends Judge Stinnett have already decided this case (prejudgment); and for him to preside over the trial that's scheduled for June 11, 2008 would be unfair justice; and a disgrace to the Judicial System.

Respondent, contends with reasonable certainty and believe there certainly appears to be Ex Parte Communication between the United States Trustee Richard F. Clippard, United States Assistant Trustee William Sonnenburg, Private Trustee Douglas Johnson; and Judge Stinnett; and the Respondent simply cannot and will not have any fair hearings or trial. Respondents, contends such obstruction of justice under the Code of Judicial Conduct, is a direct violation and by no means should procedural aspects or the merits of the case be discussed period with only one party without all other parties present. Respondent, contends its obvious someone is talking behind the scene; an also calling the shots in the proceeding other than Judge Stinnett. (Emphasis Supplied)

Respondent, contends during the pre-trial conference Judge Stinnett repeatedly told the Respondent to sit down, when she would object to the United States Assistant Trustee's, statements and comments that were very prejudice to the case in this proceeding. Respondent, contends once again Judge Stinnett displayed prejudice against the Respondent as well as personal bias. Respondent, contends his opinion and comments certainly appeared judicial pronouncement. (Emphasis Supplied)

Respondent, contends often during the pre-trial conference Judge Stinnett often acted as if Respondent didn't exist in the conference; and that only he and United States Assistant Trustee were there to make certain decisions or to consent to certain matters before the Court. Respondent, contends on at least three (3) occasions the Respondent told the Court she did not consent to certain matters such as this proceeding being a Core, that were raised; and Judge Stinnett stated he'll consent for the Respondent, as if the Respondent's couldn't make her own decisions and if the Respondent's response didn't matter. Respondent, contends once again Judge Stinnett, have in fact violated her due process and constitutional rights. Respondent, contends Judge Stinnett moved the pre-trial conference right along even though the Respondent did not consent to certain issues during the pre-trial conference. (Emphasis Supplied)

Respondent, contends she is without Counsel and simply being taken advantage of by this Court, the United States Trustee and United States Assistant Trustee, as well as Trustee Douglas Johnson. (Emphasis Supplied)

Respondent, contends Judge Stinnett simply *CAN NOT* invoke his equitable tolling powers to extend time to file complaint objecting to discharge or to determine dischargeability of a debt, after the statute -of-limitations has expired. Respondent, contends the United States Trustee and United States Assistant Trustee failed to file a Motion to extend the time to file a complaint . . . before the statute-of-limitation expired regardless of the fact the

United States Trustee and Judge Stinnett, raise 28 U.S.C. §157(J). . . . [T]he last day to oppose discharge ability was July 24, 2007 . . . which discharge ability date should _have never been changed_ being Trustee Douglas Johnson _never filed a motion to request to extend the date/time to oppose discharge ability_. The first time Trustee, Douglas Johnson ever filed a motion to extend the date/time . . . was October 31, 2007; and his motion was denied on December 27, 2007. The United States Trustee never filed a Motion to extend the date/time . . . and the statute of limitation expired/terminated on July 13, 2007. . . . As a matter of law, Judge Stinnett simply cannot invoke his equitable tolling powers, to extend the time to oppose discharge or discharge ability. . . . Respondent, contends once again Judge Stinnett brings both prejudice and personal bias to this proceeding by attempting to invoke his equitable tolling powers. Respondent, contends this is a violation of her due process and constitutional right; and simply warrants recusal/disqualification of Judge Stinnett. Respondent, contends she brought to the attention of Judge Stinnett during the pre-trial conference that the statute of limitations had expired and the adversary proceeding was filed untimely; but that didn't matter to Judge Stinnett, he simply brushed the issue off; and ignored what Respondent made the Court aware of as if what she was saying wasn't important. Respondent, contends it's very obvious that because the Respondent is without Counsel that this Court is taking advantage of the Respondent. Respondent, contends she is not an attorney; but she certainly knows that her due process and constitutional rights are seriously being violated. Congress, has laid the ground work and laws which this Court and Judge Stinnett must adhere to; and simply cannot invoke his equitable tolling powers. (Emphasis Supplied)

Respondent, filed a motion to Demand a Jury Trial in which she has every right to have during adversary proceeding and summary judgment heard before a Jury. Respondent, contends Judge Stinnett stated to the Respondent, that you would be wasting the Court's time as well as his time; and denied Respondent's Motion. Respondent, contends once again Judge Stinnett, violated the Respondent's due process and constitutional rights. Respondent, contends because of personal bias and prejudice the Respondent simply cannot and will not have any fair hearings or trial. . . .

Respondent, contends Judge Stinnett is denying her equal access to the Bankruptcy Court; to be able to contact the Clerk of Court, Maryland Wilson to discuss putting her motions on the docket for Judge Stinnett's to be hee before the Court, simply because she do not have access like the United States Trustee, United States Assistant Trustee and Private Trustee to the EFC to Electronic File and put motions on the docket. Respondent, contends Judge Stinnett told her that he do not allow his Clerk to talk with anyone outside the Bankruptcy Court; and that she will not put anything on the docket for me. Respondent, response, then her Motions will just sit there and not be heard. Judge Stinnett, probably so. Respondent, contends Ms. Wilson is a Federal Employee who serves as the Clerk of the Court; and who have been authorized to set dates for Motions to go before the Court for Judge Stinnett review; and the fact the Respondent, doesn't have access; and Judge Stinnett telling the Respondent she can't call Ms. Wilson once again is a violation of her due process and constitutional rights as well as personal bias and prejudice brought against the Respondent, by Judge Stinnett. Respondent, contends the decision of Judge Stinnett's not to allow her access to the justice system to which she is constitutionally entitled. (Emphasis Supplied)

Respondent, contends during the Pre-Trial Conference, when Judge Stinnett set the trial date for June 11, 2008 at 9:30 a.m. Respondent, ask Judge Stinnett if the trial time could be 10:30 a.m. being she's a single parent of four (4) children and needing to get the children to the care giver or camp in which in the past 10:30 a.m. wasn't a problem. Respondent, contends because of personal bias and prejudice against the Respondent

by Judge Stinnett he was quick to tell the Respondent "no"; and said something to the fact, you can't sleep in and that you need to get up earlier. Respondent, contends she found Judge Stinnett remark to be racist, humiliating and insulting! Respondent, contends she only requested an hour later, in which in the past the Court have allowed 10:30 a.m. Respondent, contend she did in fact share with the Court that she's up every morning at 4:00 a.m.; and that she doesn't just sleep in. Judge Stinnett, went on to tell the Respondent she had better make sure she has her children in place because he intends to finish the trial that day no matter how long it takes. Respondent, contends because she is now a single parent of four (4) in her senior year of college, who simply ask the Court for an additional hour doesn't given Judge Stinnett the right that he should make the Respondent feel humiliated and insulted in front of an all (white) courtroom of employees and staff and third parties who are also white. Judge Stinnett comments were simply not called for period. Respondent, contends this isn't the 1950's or 1960's when such comments could be made; and nothing done about it. Respondent, demands respect rather she has a Counsel or not. Respondent, contends she refuses to be talk to that way by anyone especially a Judicial Official under Rule 10 Code of Judicial Conduct; and then laugh about it. Respondent, contends (not) all single parent African-American women of four (4) children sleep in and don't won't to get up early. Respondent, contends by no means is she lazy! Respondent, contends remarks such as this shows he has a lack of respect for women, mothers as well as African-American that will not be tolerated. Respondent, contends once again Judge Stinnett extreme prejudice and extreme personal bias warrants immediate recusal/disqualification from this case, as well as sanctions being imposed against him. (Emphasis Supplied)

Respondent, contends she also found Judge Stinnett remarks regarding the filing of her Motions to also be racist, humiliating and insulting. Respondent, contends both she and the United States Trustee/United States Assistant Trustee (white-males) filed Motions on January 15, 2008. Respondent, contends Judge Stinnett told her that she was wasting his time and Courts time by filing motions and something to do with the times she files her motion around 4:20 p.m. or whenever you file them.; but said nothing to the United States Trustee about filing his Motion on this same day; and probably a short time later after the Respondent filed hers, simply because Respondent obtained a status report of all activity in the proceeding and the United States Trustee Summary Judgment wasn't on the system at 4:32 p.m. when the report was printed which is after the time the Court had closed. Judge Stinnett never said anything to the United States Trustee (whose white-male), about the time he filed his motion and that fact their motions are wasting his time as well as the Court times. Truth of matter the filing of the United States Trustee Summary Judgment was in fact filed untimely; and the Statute of limitation had certainly expired; but Judge Stinnett said not one word to the United States Trustee or United States Assistant Trustee. Respondent, contends it wasn't right for Judge Stinnett only humiliate and insult the Respondent. (Emphasis Supplied) Respondent, contends as a matter of fact and fact of matter, the United States Trustee is really the one wasting Judge Stinnett and the Court's time and not the Respondent as Judge Stinnett put it so vividly. Respondent, contends the United States Trustee is one who filed an adversary proceeding and summary judgment after the statute of limitations had expired; and who failed to motion to the Court for an extension before the statute of limitation expired.  United States Trustee is also the one who filed an untimely adversary proceeding and summary judgment against Respondent. In which, Judge Stinnett is simply invoking his equitable tolling powers to keep the proceeding open, which he certainly cannot do and is a direct violation. Respondent, is simply protecting her due process and constitutional rights. Respondent, contends she has a right to file motions before the court to address any issues she has and that is certainly warranted; and the fact Judge Stinnett doesn't like the fact the Respondent is raising issues that are highly significant in this proceeding, that warrants Judge Stinnett

recusal/disqualification immediately in an effort to protect the Respondent's due process and constitutional rights as well as civil rights!  Respondent, contends she has a right to equal protection under the United States Constitution and the Tennessee Constitution; and by no means should Judge Stinnett believe he's above the law to be allowed the violate the Respondent's rights simply because she's without Counsel. (Emphasis Supplied)

Respondent, contends can she have any fair hearing before Judge Stinnett? The answer is simply "NO!" Judge Stinnett simply has personal bias and prejudice and this proceeding simply cannot and will not be heard fair in any hearings, pre-trial conference or trial. Judge Stinnett, did in fact violate the Respondent due process and constitutional rights that warrant immediate recuse/disqualification of Judge Stinnett. (Emphasis supplied)

Respondent, contends Judge Stinnett is quick to tell Respondent, she is wasting the Courts time: and also his time, for the simply reason the Respondent has significant issues that Judge Stinnett simply want to hash and avoid such issues being raised to level of discussion before the Court. Respondent, contends she is not wasting Judge Stinnett time or the Courts time. Respondent, contends Judge Stinnett simply doesn't want to have to deal with the issues that the Respondent raised that are significant and one way to avoid the Respondent's issues is to repeatedly say that she wasting his time and the Court's time; and not allow her constitutional right to object, where it is certainly warranted especially when prejudicial evidence is being conveyed to the Court. Respondent, contends Judge Stinnett violated her constitutional right to have an opportunity to be heard; and he did not allow her to do so. (Emphasis Supplied) The issue the Respondent has raised warrants and in camera inspection on this entire proceeding and why Judge Stinnett is invoking his equitable tolling powers when the law simply says he cannot. Respondent, contends the fact she raised the issue that the statute of limitations and untimeliness, as well as subject matter jurisdiction, now the Respondent is wasting Judge Stinnett time and the Courts time. Respondent, contends this kind of unprofessional behavior and conduct should not and will not be tolerated regardless of the fact the Respondent is without Counsel. Respondent, contends under no circumstances will her due process and constitutional be violated especially intentional. Respondent, contends it saddens her that Judge Stinnett feels the Respondent is wasting his time and the Courts time. Respondent, contends since Judge Stinnett has repeatedly told the Respondent this perhaps this proceeding certainly is not ripe for review or any ruling of any kind. Respondent, contends her due process and constitutional rights must be protected; and the likely hood of them being protected by Judge Stinnett is highly unlikely, which warrants immediate recusal/disqualification from this proceeding. Respondent, contends if Judge Stinnett feels this strongly that the Respondent is wasting both his and the Courts time, this certainly represents he's going to be unfair in any ruling, in which he displayed during the Pre-Trial Conference on January 16, 2008 when he denied the Respondent's Motion for Continuance; and Motion to Demand a Jury Trial. Respondent, contends she has every right to Motion for Continuance and Motion to Demand Jury Trial; and because of Judge Stinnett's extreme personal bias and extreme prejudice, his ruling was unfair. Respondent, contends also during the Pre-Trial Conference Judge Stinnett became very angry and used a very harsh tone towards the Respondent; and simply just didn't want to listen to the Respondent. Judge Stinnett, repeatedly act is if he was a lawyer in the pre-trial conference; and would become very upset with the Respondent, when she didn't want to answer certain questions. Judge Stinnett did in fact cut the Respondent off numerous times and even made her leave the podium and demanded for her to sit down when she attempted to address the Court and Demand for Jury Trial or Object to statement and comments made by United States Assistant Trustee. Respondent, contends she simply angered Judge Stinnett. Respondent, contends she is in fact entitled to a Jury Trial and

to just flat deny the Respondent is believed to be a direct violation of the Respondent's due process and constitutional and civil rights. (Emphasis supplied)

Respondent, contends under U.S.C. 28 § 455 Judge Stinnett has personal bias and prejudice concerning the Respondent or personal knowledge of disputed evidentiary facts concerning the proceeding. Judge Stinnett, is acting like a lawyer in the proceeding; and the Respondent simply will not have any fair hearings or trial. Respondent, contends Judge Stinnett is discourtesy; he's plain impatient; disrespectful to African-American women and mothers; and just plain rude. Perhaps in the past Judge Stinnett has talked down to African-American women and has shown lack of respect; and nothing has been done or said about it; but not this one. Respondent contends a Complaint is certainly warranted to the Supreme Court who had Plenary Power for supervisory control over lower courts to take action under T.C.A. 16-3-501 and 16-3-504. Respondent, contends she refuses to allow a Judicial Official or anyone to disrespect her the way Judge Stinnett showed disrespect. Respondent, contends under the Judicial Conduct Canon 2, which states: A Judge should avoid Impropriety and the Appearance of Impropriety in all Activities (A) A Judge should respect and comply with the law  and should conduct himself or herself in a manner that promotes public confidence in the integrity and impartiality of the judiciary. (B) A judge should not allow family, social, or other relationships to influence his or her judicial conduct or judgment. A judge should not lend the prestige of his or her office to advance the private interests of himself or herself or others; nor should he or she convey or permit others to convey the impression that they are in a special position to influence him or her. A judge should not testify voluntarily in an adjudicative proceeding as a character witness. Under Judicial Conduct Canon 3, pt. (B(4) requires a judge to be "patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity. A judge must also perform his duties without bias or prejudice. Respondent, contends that violation of any of the standards set out in Canon 3 is impartiality per se. Under Judicial Conduct Canon 3A (8), provides that a judge shall abstain from public comment about a pending case in a manner which: suggests to a reasonable person the judge's probable decision on any particular case. A judge must also perform his judicial duties without bias or prejudice in which the Respondent contends simply want happen being Judge Stinnett did in fact tell Respondent she should be prosecuted; and haven't had an opportunity to review all the evidence or argument or any case law to draw this conclusion right off the bat. Respondent, contends she simply doesn't have a chance at winning her case, because of Judge Stinnett prejudgment, personal bias or prejudice displayed during the Pre-Trial Conference on January 16, 2008. Respondent, contends, under Judicial Conduct Canon 3 Conduct 5 Judge should perform duties of Judicial Office Impartially and Diligently (Emphasis Supplied)

Respondent, contends Judge Stinnett is allowing the United States Trustee to continue the adversary and summary judgment in bad faith that was filed frivolous simply to harass the Respondent, because she is without Counsel. Respondent, contends both the adversary proceeding and summary judgment warrant dismissal with prejudice; and Judge Stinnett knows this first had. Respondent, also brought it to the Court's attention in her objection and response to the United States Trustee adversary proceeding and once again during the Pre-Trial Conference; but Judge Stinnett ignored what the Respondent had to say; and proceeded to move forward in the conference, in which Judge Stinnett displayed personal bias and prejudice. Respondent, contends all the elements have been met for both the adversary proceeding and summary judgment to be dismissed with prejudice; and the fact Judge Stinnett has personal bias and prejudice against the Respondent refuses to dismiss the case and with prejudice. Respondent, contends the United States Trustee failed to state a valid claim upon which relieve may be granted that warrants dismissal of the case with prejudice, subject matter jurisdiction is not ripe for review before this Court,

statute of limitation has expired to file anything objecting to the Respondent's discharge; and plus the fact Judge Stinnett is invoking his equitable tolling powers is simply violating the Respondent's due process and constitutional rights. Respondent, contends once again because of personal bias and prejudice displayed against her by Judge Stinnett he refuses to acknowledge the Respondent's issues she has presented before the Court which simply shows and spells out Judge Stinnett personal bias and prejudice and the fact the Respondent is without Counsel that he can take advantage of her due process and constitutional and her rights under the Federal Civil Procedures Rules as well as Tennessee Local Rules. Respondent, contends which certainly is an abuse of discretion.

The remainder of the motion is essentially a variety of requests for relief. Some of them are apparently based on 28 U.S.C. § 144, a recusal or disqualification statute that does not apply to bankruptcy judges. Fed. R. Bankr. P. 5004(a); *Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918 (9th Cir. 2002); *Barna v. Haas (In re Haas)*, 292 B.R. 167 (Bankr. S. D. Ohio 2003); *Medrano Diaz v. Vazquez Botet (In re Medrano Diaz)*, 182 B.R. 654 (Bankr. D. P. R. 1995).

Despite the length of the preceding statement of facts, it may not be entirely complete, and if needed, the following discussion will recount additional facts. In the process of quoting the debtor's pleadings, the court may have inadvertently corrected misspelling, the court has not always used the various typeface methods of emphasis used by the debtor, and the court may have omitted "Emphasis supplied" in some places.

DISCUSSION

Events at the pre-trial conference are the primary basis of the debtor's motion to recuse, but the debtor also views them as a continuation of unjust, unfair, illegal, unethical, and intentionally wrongful treatment of her by the court and almost everyone else who has been involved in her bankruptcy case or in the adversary proceeding filed by the U. S. Trustee to deny her discharge. As a result, the court must explain events leading up to the pre-trial conference and take into account some later pleadings.

The debtor's problems with the U. S. Trustee and the bankruptcy trustee revolve primarily around her failure to provide the information required by bankruptcy law for the purpose of administering the bankruptcy case. The bankruptcy statutes and rules require an individual debtor to file schedules revealing a large amount of detailed information. 11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007 [Interim]. The schedules include:

A. Real Property

B. Personal Property

C. Property Claimed as Exempt

D. Creditors Holding Secured Claims

E. Creditors Holding Unsecured Priority Claims

F. Creditors Holding Unsecured Nonpriority Claims

G. Executory Contracts and Unexpired Leases

H. Codebtors

I. Current Income of Individual Debtor(s)

J. Current Expenditures of Individual Debtor(s)

A debtor is also required to file a statement of financial affairs. The statement of financial affairs asks for information regarding past and current income, past and current business or financial relationships, past transactions, and prior court proceedings, including prior bankruptcy cases. 11 U.S.C. § 521(a); Fed. R. Bankr. P. 1007 [Interim]; Official Form 7. The debtor must attest to the accuracy of the schedules and the statement of financial affairs by signing an unsworn declaration under penalty of perjury. Fed. R. Bankr. P. 1008; 28 U.S.C. § 1746.

The debtor has not filed any of these documents or otherwise provided any significant amount of the required information. The debtor argues that she cooperated with the trustee by testifying at the meeting of creditors, but her own pleadings reveal that her testimony did not provide any significant amount of the required information. As to almost every question, she asserted the right not to give information that might incriminate her. U. S. Const., Amend. V.

A chapter 7 bankruptcy case allows a debtor to discharge debts, but it also provides a procedure for the bankruptcy trustee to administer the bankruptcy case for the benefit of the debtor's unsecured creditors. "These purposes are fully realized when a debtor complies with the requirement that he or she submit accurate and complete information concerning identification of creditors and assets."

*North River Ins. Co. v. Baskowitz (In re Baskowitz)*, 194 B.R. 839, 843 (Bankr. E.  D. Mo. 1996);

*Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 892 (Bankr. E. D. Mich. 2000).

The debtor's duty to provide the required information is crucial to the working of the bankruptcy system. *Eastern Diversified Distributors, Inc. v. Matus (In re Matus)*, 303 B.R. 660 (Bankr. N. D. Ga. 2004). The required information is needed for a variety of purposes in the administration of the bankruptcy case. For example, the bankruptcy trustee must decide whether to assume or reject contracts and leases, whether to abandon property and whether to file a motion to dismiss the case, an objection to the debtor's claim of exemptions, a suit to recover property transferred by the debtor before bankruptcy, or an objection to the debtor's discharge. Among other things, creditors must decide whether to file a proof of claim, a motion to lift stay, a motion to dismiss the case, a complaint to deny discharge, or a complaint to except a debt from discharge. There may be other interested parties who are not creditors but need the information to make decisions relevant to the bankruptcy case. The debtor's obligation to provide the required information is a cost imposed on the debtor for the benefit of obtaining bankruptcy relief.

The debtor argues that the U. S. Trustee and the bankruptcy trustee are the only parties with any interest in her bankruptcy case, and they can investigate to find out what they need to know. The argument is fundamentally wrong. The debtor may have nothing to hide, the creditors may be unconcerned with the debtor's bankruptcy case, and there may be no other interested parties, but those facts are not grounds for failing to provide the required information. The value and effect of the required information is to be determined by the bankruptcy trustee, the U. S. Trustee, the creditors, and other interested parties. The debtor does not have the right to withhold the required information because the debtor believes it will be meaningless in the bankruptcy case. *Allard v. Hussan (In re Hussan)*, 56 B.R. 288 (Bankr. E. D. Mich. 1985); *Friedman v. Alfonso (In re Alfonso)*, 94 B.R. 777 (Bankr. S. D. Fla. 1988); *In re Gugliada*, 20 B.R. 524 (Bankr. S. D. N. Y. 1982).

Likewise, a debtor is required to attend the meeting of creditors and submit to questioning by the bankruptcy trustee, the U. S. Trustee, creditors, and any other interested party. 11 U.S.C. §§ 341 & 343; Fed. R. Bankr. P. 2003 [Interim]. At the meeting of creditors, interested parties can ask questions

on a wide range of subjects related to administration of the bankruptcy case. It is a fishing expedition allowed, even encouraged, by the statutes and the rules so long as the subject of the questioning relates to the bankruptcy case. *Chereton v. United States*, 286 F.2d 409 (6th Cir. 1961).

Creditors can ask questions for their own purposes, including possible future lawsuits against the debtor. *In re Larkham*, 24 B.R. 70 (Bankr. D. Vt. 1982). The trustee or U. S. Trustee can ask questions concerning the debtor's assets, liabilities, transactions, eligibility for bankruptcy relief, right to a discharge, and any other matter concerning administration of the bankruptcy case. In particular, the bankruptcy trustee, the U. S. Trustee, or any interested party can ask the debtor about prior bankruptcy cases filed or possibly filed by the debtor. They can ask the debtor questions aimed at determining whether the debtor was the person who filed an earlier bankruptcy case. Indeed, the debtor is required to provide proof of identity at the meeting of creditors. 11 U.S.C. § 521(h); Fed. R. Bankr. P. 4002 [Interim]. Such questions are relevant to administration of the pending bankruptcy case because prior cases affect the debtor's eligibility for bankruptcy and the scope of the automatic stay, and they may provide grounds for dismissal of the pending case or denial of the debtor's discharge. 11 U.S.C. §§ 109(g), 362(c)(3), 362(c)(4), 707(b)(3), 727(a)(8) & 727(a)(9).

A meeting of creditors is not an adversary proceeding or contested matter. It is not a civil suit or a criminal proceeding against the debtor. 11 U.S.C. §§ 341, 343 & 344; Fed. R. Bankr. P. 2003, 7001, 9013 & 9014; *In re Kincaid*, 146 B.R. 387 (Bankr. W. D. Tenn. 1992). The rules of procedure do not give the debtor the right to discovery from the bankruptcy trustee, the U. S. Trustee, or any interested party for the purpose of preparing a defense for the meeting of creditors because there is nothing to defend. The statutes and rules do not make the meeting of creditors into a mere discovery deposition subject to all the procedural rules governing discovery. The debtor does not have a constitutional right to representation by an attorney because the meeting of creditors is not a criminal proceeding. *In re Gherman*, 101 B.R. 368 (Bankr. S. D. Fla. 1989).

The law is the same with regard to a Rule 2004 examination. The debtor's various arguments concerning the Rule 2004 examination reveal a deep misunderstanding of the nature and purpose of a Rule 2004 examination. A meeting of creditors in a consumer case is expected to be short

when it first comes up, though it may be continued; extended questioning by one or more of the interested

parties generally is not possible. An interested party who desires additional time for questioning can

request a Rule 2004 examination. The broad scope of questioning that applies at a meeting of creditors

also applies at a Rule 2004 examination. *In re Muy Bueno Corp.*, 257 B.R. 843 (Bankr. W. D. Tex. 2001).

Any question is allowable if (1) it relates to the acts, conduct, property, liabilities, or financial condition of

the debtor, or (2) it relates to any matter that may affect the administration of the bankruptcy estate or the

debtor's right to a discharge. Fed. R. Bankr. P. 2004(b). A Rule 2004 examination is not litigation in which

the debtor has a right to discovery from the person who requested the examination or from anyone else.

A Rule 2004 examination is a legally authorized fishing expedition. It is not a deposition subject to all the

procedural rules governing discovery in a contested matter or adversary proceeding. It is not a criminal

proceeding in which the debtor has a constitutional right to representation by an attorney. *In re Lufkin*,

255 B.R. 204 (Bankr. E. D. Tenn. 2000); *Vaughn v. Aboukhater (In re Aboukhater)*, 165 B.R. 904, footnote

6 (9th Cir. B.A.P. 1994); *compare In re Travelstead*, 212 B.R. 505 (Bankr. D. Md. 1997) (discovery by

debtor in contested matter). In summary, a Rule 2004 examination is essentially like the meeting of

creditors but without the open invitation for all interested parties to appear and ask questions.

The U. S. Trustee requested the Rule 2004 examination at the same time as the debtor's

meeting of creditors. The U. S. Trustee obviously wanted the opportunity for more extensive questioning

of the debtor after the regular meeting of creditors was adjourned or concluded, and he also wanted to

issue the subpoena *duces tecum* to the debtor. Scheduling the Rule 2004 examination at the same time

as the meeting of creditors was apparently done for the convenience of the U. S. Trustee, the bankruptcy

trustee, and the debtor.

The debtor asserts that her rights were denied because she did not receive a copy of the

motion for a Rule 2004 examination and an opportunity to object. The debtor denied receiving the motion

or notice of hearing even though it was mailed to the address she provided the court. In any event, Rule

2004 provides for an *ex parte* procedure. The party seeking a Rule 2004 examination of the debtor files

a motion, with or without notice to the debtor, and the court can enter an order for the examination without

allowing the debtor an opportunity to object. Fed. R. Bankr. P. 2004(a). The court expects that true

scheduling problems will be worked out by the debtor and the party who requested the Rule 2004 examination, but the debtor can raise any objections to the examination by filing a motion. *In re Dinubilo*, 177 B.R. 932 (E. D. Cal. 1993); *In re Sutera*, 141 B.R. 539 (Bankr. D. Conn. 1992). This procedure recognizes the debtor's legal duty to testify to facts relevant to administration of the bankruptcy case. The court has not found any decision holding the procedure to be unconstitutional.

The debtor argues that these general rules did not apply to her because the U. S. Trustee was not seeking information to administer the bankruptcy case but was seeking the information only to discover possible grounds for criminal charges against her.

The U. S. Trustee and the bankruptcy trustee have the duty to assure that debtors provide the information required by the schedules and the statement of financial affairs. 28 U.S.C § 586(a)(3)(D); 11 U.S.C. §§ 704(a), 707(a)(3), 1307(c). The failure of the debtor to file the schedules, the statement of financial affairs, and other documents required by the law necessarily hindered the U. S. Trustee and the bankruptcy trustee in the performance of their legal duties in administration of the bankruptcy case. 11 U.S.C. §§ 704(a) & 1307(c).

Furthermore, the U. S. Trustee is seeking a civil penalty against the debtor – denial of discharge. Another civil penalty, dismissal of the bankruptcy case with prejudice, may still be available. 11 U.S.C. § 521(I); *In re Ventura*, 375 B.R. 103 (Bankr. E. D. N. Y. 2007). The debtor makes the erroneous argument that fraud and abuse are concepts that belong to criminal law but not civil law. Fraud and abuse are grounds for civil penalties in a bankruptcy case, especially denial of discharge and dismissal with prejudice. 11 U.S.C.  § 707(b) & § 727(a)(1)–(7).

The U. S. Trustee and the bankruptcy trustee were attempting to obtain information required by bankruptcy law for the purpose of administering the debtor's bankruptcy case. Administration of the debtor's bankruptcy case is a civil matter, not a criminal matter. The possibility that the information might include evidence for criminal charges against the debtor did not convert the attempts of the trustees to obtain the required information into nothing more than a quest to obtain evidence for criminal charges against the debtor. Many questions can be asked at the meeting of creditors or a Rule 2004 examination seeking information relevant to the bankruptcy case even though the debtor's answers might include or

lead to evidence for criminal charges against the debtor. For example, the debtor may be asked questions regarding prior transactions, eligibility for bankruptcy, grounds for dismissal of the bankruptcy case, and grounds for denial of discharge. The possibility that the debtor's answers might include or lead to evidence of a crime by the debtor does not make the questions improper or convert the meeting of creditors or Rule 2004 examination into nothing more than a criminal proceeding against or a criminal investigation of the debtor. *Matheany v. United States*, 365 F.2d 90 (9th Cir. 1966); *In re Lufkin*, 255 B.R. 204 (Bankr. E. D. Tenn. 2000).

The debtor could not possibly prove that the U. S. Trustee was only seeking evidence for criminal charges against her and was not trying to fulfill his duty to obtain the information the law required the debtor to provide for the purpose of administering her bankruptcy case. Indeed, the U. S. Trustee's filing of a complaint to deny discharge reveals one of the civil purposes behind the U. S. Trustee's attempts to obtain the required information.

The court did warn the debtor that the U. S. Trustee might be looking for evidence for criminal charges, but the court did not mean that the U. S. Trustee was only seeking evidence for criminal charges. The debtor eventually followed the correct procedure to avoid giving evidence of a crime; she asserted the constitutional privilege against self-incrimination. *In re Jacques*, 115 B.R. 272 (D. Nev. 1990); *In re Wright*, 220 B.R. 543 (S. D. N. Y. 1998); *In re Commercial Financial Services, Inc.*, 247 B.R. 828 (Bankr. N. D. Okla. 2000). The U. S. Trustee and the bankruptcy trustee have not taken steps to force the debtor to justify the claim of the privilege for each and every question. *United States v. Grable*, 98 F.3d 251 (6th Cir. 1996).

The debtor contends the U. S. Trustee's or the bankruptcy trustee's attempts to obtain the required information were undertaken only for harassment or intimidation. Again, the debtor is making light of her duty under bankruptcy law to file complete and accurate schedules and a statement of financial affairs. The duty was imposed on the debtor in return for the privilege of bankruptcy. *In re Sochia*, 231 B.R. 158 (Bankr. W. D. N. Y. 1999).

The debtor makes the same complaint about the meeting of creditors and the Rule 2004 examination. The debtor had failed to file schedules and a statement of financial affairs, but the U. S.

Trustee and the bankruptcy trustee still had the legal duty to obtain the required information from the debtor. To carry out their duties, they needed to find out whether the debtor would attend the meeting of creditors, and if she attended, whether she would provide any significant amount of the required information. The debtor finally attended the meeting of creditors and Rule 2004 examination. Shortly after that, the U. S. Trustee and the bankruptcy trustee obviously abandoned their attempts to obtain the required information from the debtor. This course of action does not reveal any attempt by the U. S. Trustee or the bankruptcy trustee to harass or intimidate the debtor.

The debtor also complains that she has been unfairly singled out by the U. S. Trustee because the U. S. Trustee or the Assistant U. S. Trustee attended the meeting of creditors in the debtor's case. The U. S. Trustee is in charge of meetings of creditors. 11 U.S.C. §§ 341 & 343; 28 U.S.C. § 586(a)(5); Fed. R. Bankr. P. 2003. The bankruptcy trustee, as the U. S. Trustee's designee, usually presides at meetings of creditors. Nevertheless, the U. S. Trustee, an Assistant U. S. Trustee, or any of their staff can attend any meeting of creditors for any reason or no reason. 11 U.S.C. § 102(9); Fed. R. Bankr. P. 9001(12). Their attendance cannot be a valid ground for a debtor's refusal to attend or submit to examination. It also does not justify the debtor's conclusion that the U. S. Trustee is interested only in obtaining evidence for criminal charges against the debtor.

The debtor's primary complaint is that the U. S. Trustee singled her out on the basis of false information illegally obtained by an interested party. The facts have never been made clear, but the debtor's version of the facts apparently goes as follows. She is involved in a child custody dispute in the Tennessee state courts and her opponent, the father of her children, is represented by attorney Daniel Habenicht. She was previously involved in litigation with the children's father in the Georgia state courts. During the litigation in Georgia, the children's father illegally obtained evidence of prior bankruptcy cases possibly filed by the debtor. The state court in Georgia held that the evidence was not admissible because it was illegally obtained. Attorney Habenicht knew this, but he brought the evidence to the attention of the chapter 13 trustee who told the chapter 7 trustee, and one of them told the U. S. Trustee or the Assistant U. S. Trustee. As a result of attorney Habenicht's use of the illegally obtained evidence, the U. S. Trustee or Assistant U. S. Trustee attended the meeting of creditors and searched the public records for prior

bankruptcy cases possibly filed by the debtor. Based on these alleged facts, the debtor seems to be arguing that the U. S. Trustee could not rely on the illegally obtained evidence for any purpose, even to provoke his own investigation.

The court assumes for the purpose of argument that the evidence was obtained illegally by attorney Habenicht's client, and the Georgia state court excluded it on that ground. If those facts by themselves would not make prevent admission of the evidence in this court, then the U. S. Trustee certainly was not barred from relying on the evidence to justify his investigation. Therefore, the court will address the question of whether the evidence would be inadmissible in this court on the ground it was illegally obtained by attorney Habenicht's client, and for that reason, it was declared to be inadmissible in the Georgia state court proceeding.

Under the law of collateral estoppel, the state court's decision would not make the evidence inadmissible in the debtor's bankruptcy case or the adversary proceeding. The court is assuming for the purpose of argument that the debtor could prove a state court order that excluded the evidence and otherwise meets the requirements of 28 U.S.C. § 1738.

Collateral estoppel requires the debtor to prove the U. S. Trustee was in privity with attorney Habenicht's client in the Georgia litigation. That is not possible even if the debtor had a pending and active bankruptcy case when the state court made its ruling on the evidence. Attorney Habenicht's client could not have been concerned in the Georgia litigation with the issues raised by the U. S. Trustee in this bankruptcy case and the adversary proceeding – the debtor's failure to provide information required by bankruptcy law for administration of her bankruptcy case and the debtor's entitlement to a discharge of her debts. Likewise, the U. S. Trustee could not have been concerned with the effect of the Georgia litigation on the debtor's duties in this bankruptcy case or her entitlement to a discharge. Neither the bankruptcy trustee nor the U. S. Trustee could have been in privity with attorney Habenicht's client in the Georgia litigation. *Webb v. Ethridge*, 849 F.2d 546 (11th Cir. 1988); *Farred v. Hicks*, 915 F.2d 1530 (11th Cir. 1990); *United States v. Dominguez*, 359 F.3d 839 (6th Cir. 2004); *Hutcherson v. Lauderdale County*, 326 F.3d 747 (6th Cir. 2003).

As a result, the state court's decision that the evidence was illegally obtained and inadmissible in the Georgia litigation would not prevent the U. S. Trustee from successfully arguing for admission of the evidence in the debtor's bankruptcy case or the adversary proceeding. This result follows from the lack of privity without regard to whether the state court based its decision on violations of state law or federal law, including the U. S. Constitution. The question of admissibility in this court was *not* decided against the U. S. Trustee by the decision of the state court in the Georgia litigation.

If the substantive issues between the debtor and the trustees were governed by Georgia law, the full faith and credit statute would require the court to follow Georgia evidence rules, such as the parol evidence rule, that are part of Georgia substantive law. 28 U.S.C. § 1738; *England v. Suzuki Motor Corp.*, 521 F.Supp.2d 707 (E. D. Tenn. 2007). The issues between the U. S. Trustee and the debtor are not governed by Georgia substantive law. The issues are unique to federal bankruptcy law – the debtor's duty to provide the information required by bankruptcy law for administration of her bankruptcy case and the debtor's entitlement to a discharge of her debts. Georgia evidence law, either procedural or substantive, is not binding on this court with regard to admission of the evidence. Federal law controls. Fed. R. Bankr. P. 9017; Fed. R. Evid. 101 & 1101; *Glinski v. City of Chicago*, 2002 WL 113884 (N. D. Ill. Jan. 29, 2002); *Renfro Hosiery Mills v. National Cash Register Co.*, 552 F.2d 1061 (4th Cir. 1977); *United States v. 585.87 Acres*, 210 F.Supp. 585 (D. Kan. 1962).

The federal exclusionary rules apply to evidence that the federal government or a state government obtained in violation of the U. S. Constitution. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Harris*, 9 F.3d 493, footnote 2 (6th Cir. 1983). Attorney Habenicht's client apparently was not acting on behalf of the federal government or a state government, and as a result, the evidence is not subject to the rules of federal law that exclude evidence obtained in violation of the U. S. Constitution.

Furthermore, the federal rule that excludes evidence obtained by the government in violation of the U. S. Constitution does not apply in civil proceedings. *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Nutrasweet Co. v. X-L Engineering Corp.*, 926 F.Supp. 767 (N. D. Ill. 1996); *United States v. 585.87 Acres*, 210 F.Supp. 585 (D. Kan. 1962); *International Union of*

*United Brewery, Flour, Cereal, Soft Drink  & Distillery Workers of America v. Duke & Co.*, 373 F.Supp. 778 (W. D. Pa. 1974).

A federal statute might require the evidence to be excluded if it was obtained in violation of a federal statute or state law, but the court has not found any such federal statute that applies in the debtor's bankruptcy case or the adversary proceeding to the evidence obtained by attorney Habenicht's client.

In summary, if the U. S. Trustee offered the evidence for admission against the debtor, federal law would not require this court to exclude the evidence on the ground attorney Habenicht's client obtained the evidence illegally. It follows that the illegal acts of attorney Habenicht's client in obtaining the evidence did not prevent the U. S. Trustee from relying on the evidence to justify his investigation and do not require the court to exclude the results of the investigation.

The debtor attacked the U. S. Trustee's reliance on the illegally obtained evidence on another ground. She contends that any communication between attorney Habenicht and the chapter 13 trustee, the chapter 7 trustee, the U. S. Trustee, and the Assistant U. S Trustee or his staff was an unethical, illegal *ex parte* communication. The rule cited by the debtor deals with *ex parte* communication with the court. The bankruptcy trustee, the U. S. Trustee, their employees, and their staff are not part of the court. Fed. R. Bankr. P. 9003 & 9001(4). No one has made *any ex parte* communication to the court regarding the evidence in question or any other issue in the debtor's bankruptcy case or the adversary proceeding.

For the same reason, attorney Habenicht did not violate the rule against *ex parte* communications by telling the U. S. Trustee when and where the debtor could be served with a subpoena. Anyone with information he believes to be relevant to a bankruptcy case can communicate it to the bankruptcy trustee or the U. S. Trustee. The bankruptcy code and rules are intended to encourage such communication.  It is a legal communication to an interested party in the bankruptcy case. The bankruptcy trustee or U. S. Trustee may suspect that information provided by an interested party is not entirely trustworthy. In that situation they serve as buffers to protect the debtor from such information. They can carry out their own investigation before questioning the debtor at the meeting of creditors or a Rule 2004

examination. In this case, the U. S. Trustee decided to investigate. That was entirely proper. The U. S. Trustee had the authority and the duty to investigate to determine whether the debtor is abusing the bankruptcy system and whether grounds exist for opposing a discharge of her debts. 11 U.S.C. §§ 307, 343, 521(f), 521(h), 704(b)(2), 707(a), 707(b), 727(c)–(e), 1112(b)(4), 1112(e), 1116(1), 1116(7), 1224, 1307(c), & 1307(e); 28 U.S.C. § 586(a)(3); *Stewart v. U. S. Trustee (In re Stewart)*, 215 B.R. 456 (10th Cir. B.A.P. 1997); *In re Young*, 205 B.R. 894 (Bankr. W. D. Tenn. 1997); *Neary v. Darby (In re Darby)*, 376 B.R. 534 (Bankr. E. D. Tex. 2007); *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51 (Bankr. E. D. La. 2006).

The court must also point out that the debtor is wrong in arguing that the chapter 13 trustee was removed as trustee because of *ex parte* communications with attorney Habenicht or some other questionable actions. Conversion of the chapter 13 case to chapter 7 automatically terminated the service of the chapter 13 trustee. 11 U.S.C. § 348(e). The chapter 13 trustee obviously was not removed for cause. 11 U.S.C. § 324.

The legal point of the debtor's arguments and their relationship to each other are not always clear. The debtor argues a conspiracy against her by the bankruptcy trustees, the U. S. Trustee, and attorney Habenicht or his client for the purpose of helping attorney Habenicht's client in state court litigation in Tennessee. The point of the argument may be that the court should treat the U. S. Trustee the same as attorney Habenicht's client, as if the U. S. Trustee obtained the evidence illegally.

On the other hand, the argument may have been intended as an independent ground for excluding the evidence; the debtor could be arguing that the U. S. Trustee could not rely on the illegally obtained evidence because the U. S. Trustee is engaged in an enterprise unrelated to administration of the debtor's bankruptcy case – specifically an attempt to help attorney Habenicht and his client in the state court litigation.

Either argument fails. The debtor's conspiracy theory is based on actions that the bankruptcy trustee and the U. S. Trustee should have taken for the purposes of administering the debtor's bankruptcy case. They had the duty to obtain from the debtor complete and accurate schedules and a statement of financial affairs. They had the duty to obtain the debtor's  attendance and testimony at the

meeting of creditors. Attorney Habenicht's communication with the chapter 13 trustee was the kind of communication encouraged by bankruptcy law and often received by a  bankruptcy trustee. The U. S. Trustee justifiably carried out a follow-up investigation. The U. S. Trustee scheduled a Rule 2004 examination for the purpose of additional questioning of the debtor. All of these were actions the U. S. Trustee and the bankruptcy trustee should have taken for the purpose of administering the debtor's bankruptcy case. They do not suggest involvement in a conspiracy against the debtor to help attorney Habenicht or his client in the state court litigation. *Hatch v. Abramson*, 2002 WL 493027 (N. D. Tex. Mar. 29, 2002)

Attorney Habenicht may have become involved in the debtor's bankruptcy case solely for the purpose of helping his client in the state court litigation. His motives are irrelevant to the duties of the bankruptcy trustee or the U. S. Trustee.

The debtor has argued that the U. S. Trustee and the bankruptcy trustee are mad at her because she has stood up for her rights. The debtor has asserted rights that do not exist or have not been violated. Some of the debtor's pleadings probably justify motions under Rule 11 for sanctions against her. Under Rule 11, the person who files a pleading certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable in the circumstances: (a) the claims, defenses, and other legal contentions in the pleading are warranted by existing law or a non-frivolous argument for extending, modifying, or reversing the existing law or for establishing new law; (b) the factual contentions in the pleading have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Bankr. P. 9011(b).

The bankruptcy trustee and the U. S. Trustee have not filed motions for sanctions under Rule 11. That is the typical course of action in dealing with *pro se* litigants. A motion for sanctions is likely to generate more pleadings with more of the same kinds of arguments that provoked the motion. The result is that a *pro se* litigant will often have broad leeway to abuse the legal system and anyone involved in the case on the opposing side. Nevertheless, this system generally works better than trying to hold a *pro se* litigant strictly to the same Rule 11 standards as a lawyer.

Experienced lawyers and trustees are familiar with many kinds of frustrating experiences in handling bankruptcy cases. The bankruptcy trustee and the U. S. Trustee have not dealt harshly with the debtor compared to how they might have dealt with a lawyer who filed the same pleadings on the debtor's behalf. Obviously, the U. S. Trustee and the bankruptcy trustee are not especially mad at the debtor.

The debtor also seems to be arguing that the U. S. Trustee could not rely on the illegally obtained evidence for any reason because it was unethical for attorney Habenicht to reveal it to the chapter 13 trustee. One rule of professional conduct provides that a lawyer *may* refuse to offer or use evidence that was illegally obtained. Tenn. S. Ct. R. 8; R. Prof. Cond. 3.3(d). The rule deals with offering or using evidence in a tribunal or other adjudicative body. A bankruptcy case is handled by the bankruptcy court, but that does not mean that revealing the evidence to the bankruptcy trustee or the U. S. Trustee to provoke an investigation was offering or using the evidence in a tribunal or other adjudicative body. This is true even if attorney Habenicht revealed the evidence shortly before or during the meeting of creditors. The U. S. Trustee and the bankruptcy trustee are in charge of meetings of creditors. Neither is a judge who can conduct an evidentiary hearing for the purpose of entering an order deciding a dispute between the parties. Furthermore, the meeting of creditors is not a hearing for the purpose of deciding issues on the basis of evidence presented by the parties. Thus, this rule of professional conduct apparently did not prohibit attorney Habenicht from revealing the evidence to the bankruptcy trustee or the U. S. Trustee for the purpose of provoking an investigation.

Furthermore, the rule does not clearly prohibit an attorney from offering or using illegally obtained evidence in an adjudicative proceeding. The rule only says that an attorney *may* refuse to offer or use illegally obtained evidence. A complete ban on offering or using illegally obtained evidence could conflict with an attorney's other ethical obligations. Suppose the illegally obtained evidence would reveal lies or misleading omissions by an opposing party or witness during testimony in court or in documents filed under oath. The attorney does not have an ethical duty to let the lies or misleading statements go unchallenged simply because the challenge will rely on illegally obtained evidence. *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721 (W. Va. 1994).

Finally, the official commentary to the rule speaks of an attorney's ethical obligation to consider whether evidence is trustworthy. Illegally obtained evidence may be very trustworthy, yet the attorney may be ethically bound not to use or offer the evidence in court. On the other hand, the attorney may be ethically bound in some situations to use illegally obtained evidence that appears to be trustworthy. The court cannot say that attorney Habenicht's disclosure of the evidence to the chapter 13 trustee was unethical solely on the ground that the evidence was illegally obtained by his client.

The debtor cannot show that the U. S. Trustee is merely a puppet of or a stand-in for attorney Habenicht's client. The debtor obviously thinks that her disputes with the U. S. Trustee are just another aspect of the state court litigation with attorney Habenicht's client, but the debtor is missing the point. The disputes between the debtor and the U. S. Trustee are the result of the debtor's actions in her bankruptcy case. The U. S. Trustee is concerned with her failure to provide information relevant to administration of the bankruptcy case and with whether she is abusing the bankruptcy system by repeatedly filing bankruptcy cases. Her disputes with the U. S. Trustee are peculiar to bankruptcy law. The U. S. Trustee is not seeking the information required by bankruptcy law or opposing the debtor's discharge solely for the purpose of affecting the state court litigation. Any effect on the state court litigation will be a side-effect.

The debtor has also argued that she has no duty to file schedules because the U. S. Trustee is only looking for information to use against her in the adversary proceeding to deny her discharge. The bankruptcy law requires the debtor to provide the information. No rule of law allows the debtor to escape this duty on the ground that the information may be used against her in a civil case, such as the U. S. Trustee's objection to discharge. *In re International Fibercom, Inc.*, 283 B.R. 290 (Bankr. D. Ariz. 2002); *Intercontinental Enterprises v. Keller (In re Blinder, Robinson & Co.)*, 127 B.R. 267 (D. Colo. 1991); *In re Lufkin*, 255 B.R. 204 (Bankr. E. D. Tenn. 2000).

In summary, none of the debtor's arguments lead to the conclusion that the bankruptcy trustees or the U. S. Trustee could not rely on the information provided by attorney Habenicht to justify an investigation into prior bankruptcy cases possibly filed by the debtor. The involvement of attorney

Habenicht was not a valid, legal ground for the debtor to refuse to file the required information or to answer questions at the meeting of creditors or the Rule 2004 examination.

The debtor argues that other events in the bankruptcy case reveal the court's bias against her or its participation in a conspiracy against her for the benefit of attorney Habenicht's client.

The debtor filed a motion for a protective order as to the Rule 2004 examination. Technically, the bankruptcy rules do not provide for protective orders that will apply to the meeting of creditors or a Rule 2004 examination of the debtor. Nevertheless, the courts have the power to enter protective orders for the debtor's benefit at the meeting of creditors or a Rule 2004 examination. *In re Lufkin*, 255 B.R. 204 (Bankr. E. D. Tenn. 2000). Many of the debtor's requests in the motion for a protective order were based on her mistaken view of the nature of a Rule 2004 examination, but other requests were not.

The debtor's motion asked for a ban on questions related to her children. The debtor was protected from such questions by statute. 11 U.S.C. § 112. The court presumes that this statute is known to and enforced by the U. S. Trustee, and lawyers attending the meeting of creditors or a Rule 2004 examination are presumed to know the rule. The debtor was protected by statute, and if necessary, the court would have entered an order to make sure the parties obeyed the statute. Before any questions were asked, however, the court was not required to assume that anyone would ask questions prohibited by the statute. 11 U.S.C. § 112.

As to the persons who could attend, the debtor argued that the examination should be closed to any potential questioner with a financial interest in the proceeds. She wanted to exclude creditors and their lawyers, especially any attorneys involved in the state court litigation. The debtor relied on the rule that deals with the person who is to administer the oath or record the examination. That rule does not deal with who can be present and ask questions. Fed. R. Bankr. P. 7028; Fed. R. Civ. P. 28; Charles A. Wright, et al., *Federal Practice and Procedure 3d* § 2084.

The court placed under seal the information obtained by the U. S. Trustee's investigation into prior bankruptcy cases possibly filed by the debtor. The information was placed under seal and remains under seal to protect social security numbers that may belong to persons other than the debtor.

11 U.S.C. § 107(c). The debtor made no convincing argument for an order to sealing all the other evidence that might be revealed at the meeting of creditors or the Rule 2004 examination.

The debtor may have been correct in arguing that the U. S. Trustee could not obtain and serve an effective subpoena *duces tecum* before the court entered the order for the Rule 2004 examination. *Hunter v. Hickman (In re Hickman)*, 151 B.R. 125 (Bankr. N. D. Ohio 1993). The debtor had a duty to bring the information to the meeting of creditors even if it was not subpoenaed. 11 U.S.C. §§ 521(a)(1), (h); Fed. R. Bankr. P. 4002(b) [Interim]; Order, Bankruptcy Case Docket No. 17, May 9, 2007. The Rule 2004 examination was scheduled for the same time as the meeting of creditors. As far as the court can tell, the Rule 2004 examination was held and concluded at the same time as the meeting of creditors on October 18, 2007. The court knows of no attempt by the U. S. Trustee to continue or reschedule the Rule 2004 examination. The U. S. Trustee apparently abandoned any attempt to continue the Rule 2004 or to enforce the subpoena. He doubtlessly views both courses of action as futile, or he may have decided they were not appropriate after filing of the complaint to deny discharge. *In re Dinubilo*, 177 B.R. 932 (E. D. Cal. 1993).

The debtor seems to think that her motion for a protective order prevented the Rule 2004 examination, or her other arguments convinced the U. S. Trustee to abandon it because she proved that he was violating her constitutional rights or acting outside the scope of his duties. The motion for a protective order did not excuse the debtor from appearing at the meeting of creditors or the Rule 2004 examination and did not automatically cancel or postpone either. *In re Lincoln North Assoc., L. P.*, 163 B.R. 403 (Bankr. D. Mass. 1993). The meeting of creditors and Rule 2004 examination would have been postponed or canceled, and the debtor would have been excused from appearing, only if the court entered an order to that effect before the scheduled time for the meeting and examination. The court did not enter such an order. The debtor was required to appear, but she could have declined to answer questions, and an interested party could have asked the court to rule on whether the debtor had the right to refuse to answer. The bankruptcy trustee could have continued the meeting of creditors while waiting on a decision. In other words, the issues raised by the motion for a protective order could have been

decided after the meeting of creditors and Rule 2004 examination began. The court has already rejected debtor's arguments that the Rule 2004 examination was improper.

The debtor is wrong when she argues that she was not required to appear at any meetings of creditors scheduled before she appeared on October 18, 2007. She was not entitled to wait until the court ruled on her motion for a protective order. Likewise, the debtor was required to appear at the Rule 2004 examination whenever it was scheduled before October 18, 2007.

The court must note the opportunity for delay created by the debtor's theory. The motion for a protective order was filed after the debtor missed the meeting of creditors set for May 25, 2007. The meeting was continued to July 6, 2007, and the motion for a protective order was filed the day before. The debtor apparently assumed that the law excused her from appearing. The meeting of creditors was continued to August 2, 2007 but was not held. The motion for a protective order was set for the same day. The meeting of creditors and the hearing on the motion for a protective order were continued to September 20, 2007. The meeting of creditors and the hearing on the motion for a protective order were continued again to October 18, 2007, when the debtor appeared.

The debtor argued that the bankruptcy trustee could not have continued the meeting of creditors from October 18, 2007 without a motion to the court. A trustee can continue a meeting of creditors without any court action by announcing at the meeting that it is adjourned to a particular date and time. No further notice is required. Fed. R. Bankr. P. 2003(e) [Interim]. The debtor's real argument seems to be that the trustee initially adjourned the meeting on October 18 without announcing a continuation date, and that amounted to concluding the meeting of creditors.  Assuming the debtor is correct, the trustee could still reschedule the meeting, but he would be required to give a new notice. This process may provoke an objection by the debtor, as in this case. *Chubb & Son, Inc. v. Clark (In re Clark)*, 262 B.R. 508 (9th Cir. B.A.P. 2001). On the day before the announced continuation to November 15, 2007, the bankruptcy trustee filed a statement cancelling the continuation and stating that the meeting of creditors was concluded. The trustee decided continuation of the meeting was not worth the effort; the debtor was not going to provide any significant amount of information unless she was able to hire a lawyer, and she had not been able to hire one. The court fails to see any underhanded action by the

bankruptcy trustee in his attempt to continue the meeting. The idea that the bankruptcy trustee and the U. S. Trustee were attempting a secret rescheduling of the Rule 2004 examination, when they knew it would violate the debtor's rights, is nonsense.

The debtor has also contended that it was or may have been illegal or unethical for an employee in the Assistant U. S. Trustee's office to take the recording of the meeting of creditors. The U. S. Trustee, and thus the Assistant U. S. Trustee and his employees, are responsible for recording the meeting and keeping the recording. Fed. R. Bankr. P. 2003(c) [Interim].

The debtor has made several arguments concerning the U. S. Trustee's evidence of other bankruptcy cases possibly filed by the debtor. She first argued that it was uncertain how or why the Assistant U. S. Trustee apparently had an original case file, instead of a copy, from another bankruptcy court. She later argued that the trustee has failed to file a subpoena or letter requesting original documents. Documents, especially public records, can be authenticated without proof that they were obtained by use of a subpoena. Fed. R. Bankr. P. 9017; Fed. R. Evid. 901 & 902. The filing of a subpoena also is not necessarily required to give notice to the debtor of the method by which the documents were obtained. For the U. S. Trustee to obtain a judgment in his favor on the basis of the documents, they must be admissible, which requires authentication. The court is assuming the debtor is challenging their authenticity instead of making a chain of evidence argument from criminal law. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(e); *Carafano v. Metrosplash.com, Inc.*, 207 F.Supp.2d 1055 (C. D. Cal. 2002) (moving party could not prevail on basis of unauthenticated document); *Inamed Corp. v. Kuamak*, 275 F.Supp.2d 1100 (C. D. Cal. 2002). The rules do not otherwise require the U. S. Trustee to prove to the debtor during the pre-trial process exactly how he obtained every item of his evidence.

The debtor has also argued that the U. S. Trustee threatened her with criminal charges, and that is not allowed in a civil proceeding. A case decided by the sixth circuit earlier this year involved an attorney's tort suit against the bankruptcy trustee. The attorney alleged that the bankruptcy trustee threatened him with criminal charges in the course of negotiating a settlement in the bankruptcy case. The attorney contended the threats were outside the scope of the bankruptcy trustee's official duties. The sixth circuit rejected the idea that the trustee could be liable for tort damages based on the threat because

the trustee had the duty to report suspected crimes. The trustee's threat to carry out this duty cannot be regarded as wrongdoing by the trustee. *Heavrin v. Schilling (In re Triple S Restaurants, Inc.)*, 519 F.3d 575 (6th Cir. 2008).

Finally, the court comes to the pre-trial conference. The court entered the first order for a pre-trial conference on December 12, 2007. The debtor contends that the U. S. Trustee failed to give her notice of his request for a pre-trial conference so that she could object, and the court could not enter the order without a motion and without allowing her the opportunity to object.

The U. S. Trustee did not request the pre-trial conference. The court had previously advised the parties that hearings would be set by the court as necessary.  E. D. Tenn. LBR 7007-1(a). The court had the authority to enter the order for a pre-trial conference without anyone filing a motion and without allowing anyone, either the U. S. Trustee or the debtor, the opportunity to object. Fed. R. Bankr. P. 7016; Fed. R. Civ. P. 16(a). This is the usual procedure in adversary proceedings. It does not show deliberate indifference to any party's rights. When the court sets a hearing without knowing whether the time is convenient for the parties, the court knows they may have scheduling conflicts. Motions to change the time are regularly granted. The order is essentially an order to begin the pre-trial scheduling process so that the parties cannot allow the litigation to languish. The debtor made a motion asking for the pre-trial conference to be rescheduled. The court granted the motion and re-scheduled the pre-trial conference to a week later, on January 16, 2008.

The debtor's motion to reschedule the pre-trial conference alleged that the U. S. Trustee and attorney Habenicht somehow conspired to have the pre-trial conference scheduled at the same time as a state court hearing involving attorney Habenicht's client. That was not possible since the court picked the date without consulting the debtor or the U. S. Trustee and certainly without consulting attorney Habenicht.

On the day before the scheduled pre-trial conference, the debtor filed four motions, including a second motion to continue the pre-trial conference. In the motion to continue, the debtor asserted that discovery was not complete and she had not been afforded enough time to build a foundation for her defense. Of course, discovery was not complete, and it did not need to be complete.

The pre-trial conference was not a trial or an evidentiary hearing. The pre-trial conference was supposed to result in a schedule for completing various tasks in the adversary proceeding, including discovery.

The debtor's motion to continue also argued that the court should postpone the pre-trial conference until it decided the other three motions filed by the debtor on the day before the pre-trial conference. Those were a motion to dismiss the adversary proceeding, a motion for a jury trial, and a motion to suppress evidence. The motions were filed about 4 p.m. on the day before the pre-trial conference set for 10:30 a.m. The debtor apparently misunderstood the purpose and nature of the pre-trial conference. There was no pressing need to decide any of these three motions before the pre-trial conference. Indeed, the pre-trial conference was the time to discuss the motions to determine the order in which all pending motions should be decided, which motions were likely to require a hearing, and when the hearings should be set.

During the pre-trial conference the debtor continually wanted to interrupt the Assistant U. S. Trustee and object to his statement of facts or supporting evidence. The debtor contends she had a constitutional right to object to the evidence offered by the Assistant U. S. Trustee because it was prejudicial to her defense.

The court first needs to make an irrelevant point with regard to this argument. The prejudicial effect of an opponent's evidence is not a valid ground for objecting to admission of the evidence. The evidence offered by your opponent in litigation is supposed to be prejudicial to your case. The evidence will be denied admission as prejudicial only if the probative value is outweighed by the danger of *unfair* prejudice. This seems to mean that relevant evidence will be excluded on the ground of unfair prejudice only if the evidence does little to prove the basic facts of the proponent's case and is likely to provoke a decision on an improper basis. *Robinson v. Runyon*, 149 F.3d 507 (6th Cir. 1998).

That point is irrelevant because the pre-trial conference was not a trial or evidentiary hearing. At a pre-trial conference the attorneys and *pro se* parties may argue the alleged facts and the evidence likely to be presented. The court does not accept the alleged facts as true. The court does not admit the proposed evidence over objections or possible objections by the opposing party. The court does not treat the proposed evidence as having proved any fact. The evidence mentioned in argument is only

potential evidence that may or may not be admitted at a later time. The parties are not dealing with

inexperienced jurors who might be swayed by argument of alleged facts and proposed evidence. The

court will determine the true facts on the basis of the evidence admitted at trial or admitted before the trial

for the purpose of ruling on a particular motion. Since the Assistant U. S. Trustee was not offering any

evidence as proof of the alleged facts, the debtor had no ground for her proposed objections to the

statements by the Assistant U. S. Trustee. She was given the opportunity to make her counter-arguments.

   The point of arguing facts and evidence at the pre-trial conference is scheduling. The

argument is intended to alert the court to issues that are likely to take priority *before* or during the trial.

For example, the debtor could have argued the merits of her motion to dismiss for the purpose of

convincing the court to decide the motion ahead of the U. S. Trustee's motion for summary judgment.

The debtor's motion  may have some merit based on the facts shown by the docket in her bankruptcy

case.  Any other facts relevant to the motion to dismiss should not require much proof. The court should

decide whether to dismiss the complaint before the parties put too much effort into preparing for trial and

before the court puts too much effort into ruling on the U. S. Trustee's motion for summary judgment. The

court probably would have already decided the motion except for the debtor's motion to recuse.

   Without regard to the merits of the debtor's argument for dismissal, the court was not going

to rule on the motion to dismiss at the pre-trial conference. The motion was filed late in the afternoon of

the day before, the U. S. Trustee had not had an opportunity to respond, and the motion was not set for

hearing. The debtor should have been arguing that the motion to dismiss ought to be decided first and

that other activity in the adversary proceeding should be stopped or slowed until a ruling on the motion.

Instead of making that argument, however, the debtor treated the pre-trial conference as a hearing on the

motion to dismiss or at least an opportunity for the court to grant the motion without regard to the U. S.

Trustee's opportunity to respond.

   At the pre-trial conference the court did decide to allow the U. S. Trustee to file under seal

certain records of prior bankruptcy cases that may or may not have been filed by the debtor. The court's

action must be the basis of the debtor's argument that the court spoon fed advice to the Assistant U. S.

Trustee regarding the evidence of prior bankruptcy cases. The Assistant U. S. Trustee needed to have

the unredacted documents in the record for purposes of the motion for summary judgment. The debtor objected to allowing the records to be filed under seal. Her objections, however, dealt with admissibility of the records and their weight as evidence. The court and the U. S. Trustee understood that the debtor's objections would not be affected by allowing the documents to be filed under seal with copies furnished to the debtor. Summary judgment can be granted only when there is no genuine issue of material fact. As a result, the debtor can still argue that the records would not be admissible at trial. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(e); *Carafano v. Metrosplash.com, Inc.*, 207 F.Supp.2d 1055 (C. D. Cal. 2002) (moving party could not prevail on basis of unauthenticated document); *Inamed Corp. v. Kuamak*, 275 F.Supp.2d 1100 (C. D. Cal. 2002). She can also point out problems with the records that make them unconvincing as proof of the facts asserted by the U. S. Trustee. Likewise, allowing the documents to be filed under seal was not admitting the documents into evidence for the purpose of trial. The court and the Assistant U. S. Trustee were involved in a normal pre-trial discussion of a practical problem. No significant legal or factual issues were decided. Again, the debtor misunderstood the law and procedure and the effect of what was being done.

The debtor's arguments sometimes seemed to treat the sealing of documents as hiding them from her, but that was not the effect of sealing the documents, and the debtor apparently has come to understand that they were sealed to prevent general public access. 11 U.S.C. § 107(c). The debtor may have intended to argue only that the documents were sealed before she had the opportunity to examine them. After the pre-trial conference, the court ordered disclosure of the documents to the debtor. Thus, the debtor's arguments on sealing in general appear to be moot.

The debtor's motion to recuse also complains that the court referred to some of her motions or arguments as a waste of time. The debtor argued in the motion to dismiss that the court lacks subject matter jurisdiction of the prior bankruptcy cases that the U. S. Trustee contends were filed by the debtor. The U. S. Trustee intends to introduce records of prior bankruptcy cases as evidence that the cases were filed by the debtor. The court does not need subject matter jurisdiction of the prior bankruptcy cases for the records to be used as evidence.

The debtor also argued that the court lacks subject matter jurisdiction to revoke the discharge in any of the earlier cases because the time for filing a complaint has expired in those cases. The late filing of a complaint is a ground for dismissal, but late filing does not deprive the court of subject matter jurisdiction. In any event, the U. S. Trustee's complaint does not seek to revoke the discharge in any of the earlier cases.

At the pre-trial conference the debtor argued that the adversary proceeding is not a core proceeding and she did not consent to its being a core proceeding. A complaint to deny discharge commences a core proceeding. 28 U.S.C. § 157(b)(2)(J); *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850 (6th Cir. 1993).[1] Furthermore, the debtor's consent is not relevant to whether the proceeding is core or non-core; consent is only relevant to whether the bankruptcy court can render a final, appealable decision when the proceeding is non-core. 28 U.S.C. § 157(c).

At the pre-trial conference the debtor also argued that she is entitled to a jury trial. The law in this circuit is settled against the debtor. She has no constitutional right to a jury trial because a complaint to deny discharge is primarily an equitable proceeding, and the constitutional right to a jury trial applies to suits at common law. U. S. Const., Amend. VII: *Longo v. McLaren (In re McLaren)*, 3 F.3d 958 (6th Cir. 1993); *Smith v. Bandy (In re Bandy)*, 237 B.R. 661 (Bankr. E. D. Tenn. 1999); *Anderson v. Demis (In re Anderson)*, 98 Fed.Appx. 367, 2004 WL 627061 (6th Cir. Mar. 19, 2004); *see also Jaster v. Schmidt (In re Schmidt)*, 188 B.R. 36 (Bankr. D. Nev. 1995) (revocation of discharge).

The debtor's motion to recuse takes the court to task for its disdainful treatment of these arguments. The court need not refrain from strong criticism of frivolous legal arguments, especially when there is no jury present that might be influenced by such criticism. Such criticism does not indicate bias or prejudice by the judge and will not justify recusal. *Mandel v. Town of Orleans*, 233 F.Supp.2d 147 (D. Mass. 2002); *Spangler v. Sears, Roebuck and Co.*, 759 F.Supp. 1327 (S. D. Ind. 1991).

The debtor contends that the court treated the entire motion to dismiss as a waste of time. This allegation must be the result of the debtor's failure to pay close attention to what the court said. The

---

[1] The Supreme Court overruled the decision in *McLaren* that § 523(a)(2)(A) requires reasonable reliance instead of justifiable reliance. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

court did not express the opinion that the motion to dismiss was likely to be denied. The motion to dismiss was filed the day before, it was not set for hearing at the pre-trial conference, and the U. S. Trustee's time to respond had just begun. The court was not going to rule on the motion as a result of the pre-trial conference because it would have been procedurally unfair to the U. S. Trustee and the debtor.

The court treated the debtor's motion to dismiss the same as the U. S. Trustee's motion for summary judgment. Both were filed the day before the pre-trial conference. The court did not treat the pre-trial conference as a hearing on either motion that would result in an order dealing with either motion.

As a result of the pre-trial conference, the court entered a scheduling order for trial preparation. The court entered a separate order denying the debtor's motion to continue the pre-trial conference. The debtor contends the court ruled on her other motions but left the rulings out of the scheduling order as a means of denying her the right to appeal. The debtor misunderstood the purpose and effect of the orders. The court did not enter orders ruling on the debtor's motion for a jury trial, the debtor's arguments as to subject matter jurisdiction, or the debtor's argument on the core or non-core question, including consent. The court did not enter any such orders because that was the proper method to refrain from making a decision. Fed. R. Bankr. P. 9021 & 5003; Fed. R. Civ. P. 58; *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989); *Yurkanin v. U. S. (In re Yurkanin)*, 234 B.R. 73 (Bankr. E. D. Mich. 1998). The court left the motions and arguments pending. The court did this to be fair to the debtor and the U. S. Trustee since the motions had just been filed and were not ready for decision. The failure to enter an order allowed the debtor to go forward with the motions to the extent she desired. The debtor had no reason to be concerned with her right to appeal since it could not begin to run until the court actually entered an order.

The Assistant U. S Trustee understood the purpose of the pre-trial conference and the process. As plaintiff, he would be allowed to make statements relevant to scheduling, and the statements could include discussion of the alleged facts, the potential evidence, and pending motions. The debtor, as defendant, would then be allowed the opportunity to make the same kind of statements. There could be some more back and forth arguing in the process of determining the schedule. The court would not, however, admit or refuse to admit any evidence, and the court would not treat the pre-trial conference as

a hearing on any previously filed motion because none were set for hearing at the same time. The court had no need to instruct the Assistant U. S. Trustee on proper procedure.

The debtor obviously did not understand the process. The debtor has regularly treated every hearing as a hearing on everything previously filed or at least an opportunity for the court to rule in her favor. The debtor then takes the court's failure to rule in her favor as evidence that the court favors the U. S. Trustee and will rule against her or has already ruled against her, probably for illegal or unethical reasons. This attitude is evident in the motion to recuse. The motion to recuse argues the merits of the motion to dismiss. She contends the court could not exercise its equitable tolling powers to extend the deadline for filing complaints. The court has made no decision on the debtor's motion to dismiss, but the debtor treats the situation the same as if the court ruled for the U. S. Trustee and against her.

The debtor's attitude can make hearings more difficult. At the pre-trial conference the court prevented the debtor from objecting to statements by the Assistant U. S. Trustee or interjecting her arguments because it was not the correct procedure. The debtor is obviously exaggerating when she states that the court stopped her every time she attempted to say something. Her own pleadings reveal that the court allowed her to speak when her time came.

The debtor also complains that the court did not criticize the U. S. Trustee for filing his motion for summary judgment on the day before the pre-trial conference. The debtor missed the point of the criticism. She wanted to treat the pre-trial conference as an evidentiary hearing or an opportunity for the court to rule on the motions she filed the day before. The Assistant U. S. Trustee obviously was not treating the pre-trial conference as a hearing on his summary judgment motion. The U. S. Trustee knew that the motion would *not* be decided as a result of the pre-trial conference, but he also understood that his motion for summary judgment was relevant to scheduling, the purpose of the pre-trial conference.

The debtor contends she is being denied equal access to the court because the court has barred her from talking to the courtroom deputy for the purpose of scheduling hearings. According to the debtor, she asked whether she could call the courtroom deputy to schedule hearings on motions, and the court told her she could not. The debtor apparently assumes that if the U. S. Trustee calls the courtroom deputy to have a motion scheduled for hearing, then it will be set for hearing. The debtor may also be

assuming that a motion will not be decided until the court holds a hearing on the motion. These assumptions would agree with the debtor's general and convenient attitude that she is entirely in the right and is simply being harassed by all her opponents, and they are able to use unwritten court procedures to aid them in harassing her. In any event, neither assumption is correct.

Motions in adversary proceedings generally are not set for hearing. E. D. Tenn. LBR 7007-1(a). If the motion includes a request for hearing or the moving party files a separate motion to set, the court will not automatically set the motion for hearing. The court will set a hearing if and when the court decides that a hearing is needed. Calling the courtroom deputy to have a motion set for hearing is not the correct procedure for any party and will not cause the court to set the motion for hearing. In this regard, the debtor is in the same position as the U. S. Trustee.

Motions in bankruptcy cases are subject to the bankruptcy rules and the local rule dealing with motion practice. They govern whether a motion must be set for hearing and the proper time for the hearing. E. D. Tenn. LBR 9013-1. If a motion does not come within those guidelines, the court will routinely set it for hearing if it requires a hearing, and if not, the court will rule on the motion after the time to respond has expired. A party should have no reason for consulting the courtroom deputy to schedule a hearing on a motion in a bankruptcy case.

The debtor accuses the court of gender bias, racial bias, and animosity toward the debtor on the basis of the discussion at the pre-trial conference of the starting time for the trial. The pre-trial conference was held on January 16, 2008, and the trial was set for June 11, 2008. The court wanted to set the starting time at 9:30 a.m. so that the trial might possibly be finished in one day. The debtor requested a starting time of 10:30 a.m. because her kids would be out of school, and she would need to get them up and going. According to the debtor, the court told her that she would need to get up and going and couldn't sleep in because the trial needed to start at 9:30 a.m. The debtor now argues that the court's statements were racist, sexist, humiliating, and insulting.

The debtor was arguing, in effect, that even with five months notice of the trial date, the court should not expect her to arrange her schedule for that one morning so that she could make it to court by 9:30 a.m. Many judges and lawyers would consider 9:30 a.m. a late start for a trial that might be

completed in one day. Indeed, 9:30 a.m. is a late start for most personal business that is expected to take the better part of a day. The court had previously granted the debtor continuances for good cause in the bankruptcy case and the adversary proceeding. The debtor had regularly failed to show up for various matters in the bankruptcy case. The court was somewhat surprised by the debtor's argument that five months was not enough notice for her to arrange her schedule so that she could get to court one hour earlier than the late morning time she wanted. The debtor in effect insulted herself, either for the sake of one hour or for the purpose of getting the court to do as she wanted. Since the court pointed out the insult, the debtor has tried to turn it around into an insult by the court. The court's lecture would have applied to any parent of either gender or any race who made the same argument.

The court's statements were essentially like criticism of a weak legal or factual argument by a lawyer. The criticism may be a personal affront to the lawyer only in the sense that it jolts the lawyer into clearer thinking. This reasoning applies even though the debtor's argument and the court's criticism involved her ability to arrange her personal schedule. The argument was still a factual argument as to scheduling.

The law does not require a court to refrain from justifiable criticism of a poor argument simply because the litigant is a woman, a single parent, an African American, or representing herself. Of course, there are limits on the grounds that will make criticism justifiable. The court's criticism did not take the view that the debtor's supposed inability to arrange her schedule five months in advance was due to her status as a woman, a single parent, an African American, or a *pro se* litigant. The debtor may have chosen to take the criticism as offensive, but that makes no difference since the criticism was restricted to pointing out that the debtor's argument was not consistent with common sense.

The court fails to see any racial implication in the debtor's insult to herself or the court's pointing it out. *Conway v. Vergos*, 297 B.R. 116 (W. D. Tenn. 2003). The debtor's choice to be offended, however, apparently does come into play. At the pre-trial conference, the court asked the debtor if she was accusing the court of racism. The debtor said she was not. The motion for recusal suggests that the debtor subsequently decided to make an accusation of racism as a ground for recusal because it would be a good method for delaying this adversary proceeding.

The court suspects the same is true for the debtor's argument that the court's remarks were sexist. In any event, the court's criticism would have applied to a parent of either gender who made the same argument that five months is not enough time to plan for one less hour on the morning of one day. *Moix-McNutt v. Coop (In re Moix-McNutt)*, 215 B.R. 405 (8th Cir. B.A.P. 1997). The court must also reiterate that the debtor in effect insulted herself by making the argument. She cannot make the court a wrongdoer for having pointed out the problem.

Of course, *pro se* litigants are less likely than lawyers to be familiar with the common occurrence of having the judge challenge a weak argument. *Pro se* litigants are more likely to take the judge's action personally and to view the judge as being unfair or biased. The court's criticism was justifiable and not based on the idea that the debtor's gender, race, single motherhood, or representation of herself made her as incapable as she argued. This normal criticism is not a ground for recusal. *Mandel v. Town of Orleans*, 233 F.Supp.2d 147 (D. Mass. 2002); *Spangler v. Sears, Roebuck and Co.*, 759 F.Supp. 1327 (S. D. Ind. 1991).

In summary, most of the debtor's arguments that the court has favored the U. S. Trustee and is biased or prejudiced against her are based on her misunderstanding of the law and procedure. She attacks the court for actions taken or not taken even though the court has followed the law and has attempted to make the procedure fair to both the U. S. Trustee and the debtor. Indeed, the debtor questions rulings that are essentially in her favor. Judicial rulings alone cannot be grounds for recusal on basis of actual bias or partiality. The debtor must prove an extrajudicial source. 28 U.S.C. § 455(b)(1); *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Conway v. Vergos*, 297 B.R. 116 (W. D. Tenn. 2003). This brings the court to the debtor's other alleged grounds for recusal.

The debtor has accused the court of taking part in a conspiracy against her with the trustees or attorney Habenicht and his client or with all of them. These accusations include allegations of *ex parte* contact between the court and other parties concerning the debtor's case or the adversary proceeding. The debtor's reasoning seems to be that since the court has not ruled in her favor at the first or every opportunity, without regard to whether the procedure would be fair to the U. S. Trustee, then the

court must be against her, and since she is clearly in the right, the explanation must be the court's involvement with the other parties in making sure the debtor loses.

Of course, this reasoning depends partly on the debtor's view that the court has been wrong on the law or the procedure almost every time it has ruled against her or has declined to rule in her favor *immediately*. The court has already explained the wrongness of the debtor's view. The court's rulings do not provide the debtor a basis for alleging that the court is involved in a conspiracy against her or is basing its decisions on *ex parte* contact with the U. S. Trustee or other parties.

In this regard, the court should try to explain professional detachment. The court is concerned with reaching correct decisions in the bankruptcy case and the adversary proceeding based on the law and the evidence that is admitted, after affording the parties a fair process, but the court does not care who the parties or their lawyers are. The disputes between the debtor and the U. S. Trustee could be disputes between a different debtor and a different trustee with different lawyers. With the same pleadings and evidence, the court would reach essentially the same results.

The debtor seems to think that the court is so concerned with her as an individual that the court would engage in illegal *ex parte* communications and reach incorrect decisions for the purpose of favoring the U. S. Trustee or other interested parties. She could not be more wrong. The court has no knowledge of relevant or irrelevant facts other than knowledge obtained in court proceedings. The court is not interested in obtaining any such knowledge. The court has had no illegal *ex parte* contacts concerning the debtor, the debtor's bankruptcy case, or the adversary proceeding. Likewise, the court's prior experience with the U. S. Trustee and his staff does not mean the court will rule in favor of the U. S. Trustee when the law does not allow it. Indeed, the court is generally more demanding of trustees and other lawyers whose duties bring them into court regularly. The debtor's accusations may be purely for the purpose of delay or they may are based on a mistaken view of the law and procedure, but in either case, the accusations are wrong. *In re Yanks*, 79 B.R. 83 (S. D. Fla. 1987).

The debtor's allegations and argument also do not support recusal on the ground that this judge's impartiality might reasonably be questioned.  A reasonable observer should conclude that the

court has been remarkably patient with and fair to the debtor despite her lack of legal knowledge. *In re*

*Yanks*, 79 B.R. 83 (S. D. Fla. 1987).

      The court will enter an order denying the motion for recusal.

<div align="center"># # #</div>